Emolyn L. **TROGNER**

v.

**NEW YORK LIFE INSURANCE CO., et al.**

**Civ. No. Y–85–4106.**

United States District Court,
D. Maryland.

April 17, 1986.

Susan Silber, Takoma Park, Md., and David B. Adler, Washington, D.C., for plaintiff.

Frank J. Vecella, Baltimore, Md., for defendant New York Life Ins. Co.

Larry A. Ceppos, Rockville, Md., for defendant Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.

MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff, Emolyn Trogner, brings this action alleging that she was wrongfully denied disability benefits under an insurance contract issued by defendant New York Life Insurance Company ("New York Life"). The insurance policy was arranged and premiums paid by Trogner's employer, defendant Kaiser-Georgetown. Both defendants move to dismiss the complaint, or in the alternative, for summary judgment, on the bases that all common law claims are pre-empted by the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and because the ERISA claims are barred by the statute of limitations.

Substantively this case is a factual dispute as to whether or not Trogner was covered by her disability insurance when she suffered a heart attack on September 11, 1982. She had begun working for Kaiser-Georgetown as an administrative secretary in February, 1981, and on September 3, 1982, she signed a voluntary resignation form which was to terminate her employment. Trogner contends that the resignation was effective on September 22, 1982— nineteen days after the form was signed and 1½ weeks after she became disabled. Thus, she insists that she is eligible for benefits under the employee insurance plan. Defendants argue that her resignation was effective immediately upon signing the form on September 3, 1982, and therefore she was not an employee at the time of her illness.

Plaintiff's original complaint contained six counts and a seventh count was added in plaintiff's amended complaint. Counts I and II are against New York Life for breach of long and short term disability benefits contracts. Counts IV and VI are against Kaiser-Georgetown alleging the intentional interference with contract or protected property rights (Count IV), and the breach of employment contract (Count VI). Counts III, V, and VII are against both

defendants. Count III alleges a breach of duty of good faith and fair-dealing, Count V alleges intentional infliction of emotional distress, and Count VII charges defendants with violations of duties imposed under ERISA.

## COMMON LAW STATE CLAIMS

Both defendants argue that the state claims brought against them in Counts I through VI must be dismissed because the benefits plan is regulated under the comprehensive federal scheme developed in ERISA, and because all state actions are pre-empted by it. The statutory scheme was designed to promote the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1982). In an effort to regulate the employee benefits field, Congress provided that ERISA "shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). This pre-emption clause has been the subject of extensive debate, yielding various conflicting interpretations of the provision's intended scope. Essentially, defendant's urge this Court to interpret the clause as precluding the maintenance of all common law state claims against the employer and the insurer.

"Although the language of the pre-emption clause is broad, it is not all-encompassing," *Lane v. Goren*, 743 F.2d 1337 (9th Cir.1984), and it most certainly does not have the breadth which defendants suggest. *See Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir.1984). Through ERISA, Congress established benefits plan regulations as exclusively a federal concern, *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981), yet there are several explicit limitations on the scope of state law pre-emption. The two which are relevant to the inquiry in this case are that: 1) the pre-empted law must "relate to" employee benefits plans, 29 U.S.C. § 1144(a); and 2) the pre-empted law may be "saved" by the exception for laws which regulate insur-

ance, 29 U.S.C. § 1144(b)(2)(A). Plaintiff's claims must be scrutinized in terms of these two limitations as to each defendant to determine whether or not the claims are pre-empted. In regard to the employer, Kaiser-Georgetown, the analysis must begin with whether the employer has provided a "plan" which falls within the scope of ERISA. If so, then the question is whether the state claims against the employer "relate to" the plan to cause them to be pre-empted by the federal statute. In contrast, since New York Life is an insurer, the claims against it must be analyzed within the context of the insurance saving statute to determine whether the common law claims are properly pre-empted.

## KAISER–GEORGETOWN—CLAIMS AGAINST THE EMPLOYER

The initial inquiry must determine if the disability plan under which plaintiff contends she is entitled to benefits, falls within the scope of ERISA, thereby triggering the state law pre-emption. Plaintiff argues that the plan is not covered by ERISA because the employer did not comply with the required ERISA filings with the Department of Labor. Kaiser-Georgetown disputes this alleged noncompliance, yet argues that coverage under ERISA is not contingent on the employer or plan sponsor completing an application with the Department of Labor. It is clear that the employer's filings are irrelevant, because the coverage of ERISA is defined by statute and is not contingent on the employee's acts.

An employee benefit plan includes:

any plan, fund, or program which was ... established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

29 U.S.C. § 1002(1); *Donovan v. Dilling-ham*, 688 F.2d 1367, 1371 (11th Cir.1982). The parties agree that the disability income insurance was provided by Kaiser-Georgetown as part of a benefits package, for which it paid 100% of the premiums. Kaiser-Georgetown maintained the plan through the purchase of insurance which provided benefits in the event of disability, and this arrangement falls within the scope of ERISA regulation. This discussion also disposes of plaintiff's arguments that Kaiser-Georgetown is not covered by ERISA because it is not a fiduciary or because it is deemed to be an insurance company. This plan clearly fits the definition of an employee benefits plan, and falls within the scope of coverage of the Act. 29 U.S.C. § 1003. Also, the employer cannot be "deemed" to be an insurer simply because it purchases insurance from an insurance company against which state claims are saved pursuant to 29 U.S.C. § 1144(b)(2)(A). *See* 29 U.S.C. § 1144(b)(2)(B) (an employee benefit plan shall not be deemed to be an insurance company).

Since the plan does fall within the scope of ERISA, the next question is whether the state claims brought against the employer are pre-empted by the federal statute. Under 29 U.S.C. § 1144(a), all state laws are superseded "insofar as they relate to any employee benefit plan." The phrase, "relates to," has caused significant confusion when it is applied to laws, which have a very general application, such as plaintiff's common law claims. *See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. at 524, 101 S.Ct. at 1906 (concluding that state law governing workers' compensation laws did relate to pension plans because of indirect intrusions). The courts have given the phrase its

> broad common sense meaning, such that a state law 'relates to' a benefits plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan. The pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements. 'Even indi-

rect state action bearing on private pensions may encroach upon the area of exclusive federal concern.'

*Metropolitan Life Insurance Company v. Commonwealth of Massachusetts,* —— U.S. ——, ——, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. at 525, 101 S.Ct. at 1907, and *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–99, 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490 (1983) ).

■ The state common law claims brought against Kaiser-Georgetown are the intentional interference with contract or protected property rights, breach of employment contract, breach of duty of good faith and fair-dealing, and intentional infliction of emotional distress. In general, courts have refused to entertain such state common law claims. *See, e.g., Kuntz v. Reese,* 760 F.2d 926, 933–35 (9th Cir.1985) (misrepresentation claim held pre-empted); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (claims for tortious interference with contract held pre-empted); *Authier v. Ginsberg,* 757 F.2d 796 (6th Cir.1985) (action for retaliatory discharge held pre-empted); *Justice v. Bankers Trust Co., Inc.,* 607 F.Supp. 527, 531 (N.D.Ala.1985) (common law fraud and contract claims pre-empted). Taking a common sense approach, it is clear that the contract related claims and the breach of duty of good faith and fair-dealing claims are precisely in the field which ERISA was intended to occupy—they are actions for improper management of the plan similar to those under ERISA. The maintenance of these common law claims could to some degree interfere with federal control and diminish the uniformity of ERISA. Congress intended to occupy the field, and therefore pre-emption is appropriate.

■ Plaintiff's claim for intentional infliction of emotional distress as an intentional tort is less clearly within the field ERISA occupies, and therefore requires

greater scrutiny to determine whether the claim truly relates to employee benefits plans. *But see Russell v. Massachusetts Mutual Life Insurance Company*, 722 F.2d 482, 487 (9th Cir.1983) (intentional infliction of emotional harm claim pre-empted), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96.[1] Plaintiff claims that Kaiser engaged in extreme and outrageous conduct by altering documents or making false statements to deny plaintiff her disability benefits. The essence of this claim, like the other common law claims in this case, is that the employer and the insurance company improperly handled the disability claim, so it does "relate to" the employee benefits plan and should be pre-empted.[2]

## NEW YORK LIFE—CLAIMS AGAINST THE INSURER

■ Congress left the regulation of insurance within the realm of state control, by explicitly providing in the insurance savings clause that the broad ERISA pre-emption does not apply to state insurance regulations.[3] Plaintiff argues that the state claims can be maintained against New York Life by virtue of the insurance savings clause. Defendant disagrees, however, and argues that the insurance exemption is quite narrow, and that only state laws which satisfy a three-part test defined in *Group Life & Health Insurance Company v. Royal Drug Company*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979), can be viewed as laws which regulate insurance. *See Metropolitan Life*, —— U.S. at ——, 105 S.Ct. at 2390.

*Metropolitan Life* considered a question similar, but not identical, to the one before this Court. In *Metropolitan Life*, the insurers argued that ERISA pre-empted a state law which required that specified minimum mental-health-care benefits be provided a state resident who is insured under a general insurance policy or an employee health-care plan. The Court held that although the law fell into the realm of state health-care policy, it also regulated insurance and was saved from pre-emption by the operation of the savings clause. By analogy and to demonstrate how clearly the state regulation was related to insurance, the Court utilized the case law which developed under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* These cases identified three criteria relevant to determining whether a particular practice falls within the "business of insurance" under the McCarran-Ferguson Act:

> first, whether the practice has the effect of transferring or spreading a policy holder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Metropolitan Life*, —— U.S. at ——, 105 S.Ct. at 2390 (citing *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) and *Royal Drug*, 440 U.S. at 205, 99 S.Ct. at 1070). The regulation scrutinized by the Court was applied to an area which satisfied the three requisites, and this lent support to the Court's conclusion that the regulation fell "squarely within the saving clause as a law 'which regulate(s) insurance.'" *Metro-*

---

**1.** Defendant cites the Supreme Court determination in *Russell* as supportive of the broad assertion that common law claims are pre-empted by ERISA because the Court left the Circuit Court determination undisturbed. Such reliance is improper, however, because the respondent in *Russell* never filed a cross petition on the issue, so it was never addressed by the Court. —— U.S. at —— n. 4, 105 S.Ct. at 3088 n. 4. The Supreme Court has not yet considered this issue.

**2.** It is conceivable, however, that some common law claims, just like some state statutes, will be too tangential to the scope of ERISA to fall

within the pre-emption. Thus, as a matter of law, this Court has not ruled out the possibility of bringing a state common law claim against the employer. However, there must be always an inquiry into whether each common law claim does "relate to" the employer benefit plan.

**3.** The savings clause provides, "nothing in this subchapter shall be construed to exempt any person from any law of any state which regulates insurance, banking, or securities. 29 U.S.C. § 1144(b)(2)(A).

*politan Life,* —— U.S. at ——, 105 S.Ct. at 2390. Yet it would be a distortion of the Court's opinion to suggest that it limited the scope of the insurance savings clause to laws which satisfied the three-part test; that test was designed to determine what *constitutes* the business of insurance rather than what type of law *regulates* that business. In this case the test is inapplicable because the claim clearly revolves around the business of insurance—the claim is for breach of an insurance contract. The only question is whether the common law claim is considered a "regulation" of that area of business.

Congress never intended to limit the insurance saving clause to traditional insurance laws. *Id.* at ——, 105 S.Ct. at 2390. In fact, the Court noted that by unduly limiting the saving clause, it would be rendering it meaningless contrary to congressional intent. "The presumption is against pre-emption, and (the Court was) not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope." *Id.* at ——, 105 S.Ct. at 2390. Thus, the Court "decline(d) to impose any limitations on the saving clause beyond those Congress imposed in the clause itself." *Id.* at ——, 105 S.Ct. at 2392. It recognized that in doing so, employee benefits plans which purchase insurance may be vulnerable to some level of indirect state regulation by virtue of the interaction with the insurance industry. But the Court accepted this as an inevitable result of the congressional decision to "save" state insurance regulations. *Id.* at ——, 105 S.Ct. at 2392 ("our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulations while the latter are not").

The regulation of insurance is conducted by the state through specialized statutes as well as generalized common law; both are part of the fabric of state regulation and are utilized and relied upon to enforce the obligations the insurer has to its customers. *See Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162, 1168 (C.D.Cal.1980) (fact that most claims arose from common law rather than statutory

law is irrelevant; there can still be laws regulating insurance). To exclude state decisional law from the ERISA savings clause on matters such as breach of contract, and breach of duty of good faith and fair-dealing, would constitute an arbitrary removal of state control over a sphere of interest that Congress explicitly intended to preserve.

It would be most consistent with the construction of ERISA to analyze the scope of the saving clause in the same manner as the pre-emption clause. Just as the common law claims for breach of contract "relate to" employee benefits plans when they are used by claimants to regulate such pension plans, the same common law claim as used against an insurer as an important part of a state scheme for regulating insurers. *Cf. Presti v. Connecticut General Life Insurance Co.,* 605 F.Supp. 163, 167 (N.D.Cal.1985) (laws regulating the business of insurance are those state statutes and laws of general application aimed at protecting or regulating the relationship between the insurer and the policyholder) (citing *SEC v. National Securities, Inc.,* 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969)).

It is particularly important to maintain the breadth of the saving clause because there is a danger that insurers could either avoid intended regulation by carving out an undefined abyss somewhere between the reach of both ERISA and state regulation or nullify the effect of the saving clause. For example, the reach of ERISA has limitations, and on occasions, federal courts have declined jurisdiction over a case brought by a beneficiary of an employee benefits plan against only the insurer. *See Cate v. Blue Cross & Blue Shield of Alabama,* 434 F.Supp. 1187 (E.D.Tenn.1977) (J. Young). *See also Taylor v. General Motors Corp.,* 763 F.2d 216, 219 (6th Cir.1985) (not established that all actions for benefits allegedly due under a group insurance policy arise under federal law simply because insurance policy is part of overall ERISA benefits plan); *Home for Crippled Children v. Prudential Insurance Co.,* 590

F.Supp. 1490 (W.D.Pa.1984) (action against group insurer not necessarily governed by ERISA). It would be contradictory and unnecessarily confuse the issue to hold that state claims which are normally utilized in these actions against insurers are pre-empted by ERISA.

From a practical standpoint, the fact that an insurer sells policies through an employee benefits plan should not diminish the ability of the policy holder to secure her rights under the contract. *Eversole*, 500 F.Supp. at 1168; *National Business Conference v. Anderson*, 451 F.Supp. 458, 461 (S.D.Iowa 1977). *See also American Progressive Life and Health Insurance Company of New York v. Corcoran*, 715 F.2d 784, 787 (2d Cir.1983). The common law claims as against the insurer, New York Life, fall within the scope of the saving clause and are not pre-empted by ERISA.

## PUNITIVE DAMAGES

■ Plaintiff's complaint includes requests for punitive damages under ERISA. It was recently decided, however, in *Massachusetts Mutual v. Russell*, —— U.S. at ——, 105 S.Ct. at 3093, that extra contractual and punitive damages are not recoverable under ERISA. The Court presumed that such remedies were deliberately omitted from the ERISA enforcement scheme, and "where a state expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Russell*, —— U.S. ——, 105 S.Ct. at 3093 (quoting *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979). Thus, plaintiff's argument has no merit, and punitive damages will not be recoverable under the ERISA based claims.

■ Parties also disagree about the ability of plaintiff to recover punitive damages under the state common law claims. The Maryland rule is that punitive damages may not be recovered in pure breach of contract cases. However, punitive damages can be recovered where the defendant maliciously breaches the contract. *Wiggins v. North America Equitable Life Assurance Company*, 644 F.2d 1014, 1017,

1018 n. 2 (4th Cir.1981). The malice required consists of "an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Id.* at 1018 n. 2 (citing *Food Fair Stores v. Hevey*, 275 Md. 50, 55, 338 A.2d 43 (1975).

■ The damages recoverable under the contract, however, are not restricted to the precise amount of insurance withheld. Contract damages should compensate the injured person for the loss sustained, *Pennsylvania Thresherman & Farmers Mutual Casualty Insurance Co. v. Messenger*, 181 Md. 295, 301, 29 A.2d 653 (1943), including the recovery of certain consequential damages resulting from the breach of an insurance contract. *Wiggins*, 644 F.2d at 1017 n. 1.

■ The only common law claims which remain are those against New York Life. Wilfullness was alleged in the complaint, but plaintiff has not stated a claim for malicious behavior under Maryland law. Therefore, punitive damages will not be an issue in this case.

## STATUTE OF LIMITATIONS

■ Defendants argue that plaintiff's ERISA claims, which were added as Count VII of the amended complaint, are barred by the three year applicable statute of limitations. This argument has no merit. "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Rule 15(c), Fed.R.Civ.Proc. Defendants concede that the original pleading was filed in a timely manner, and therefore, the amended complaint relates back and is also timely.

## JURY TRIAL

■ A final issue raised by the parties is whether or not plaintiff is entitled to a jury trial on some or all of her claims. ERISA is silent on the issue of whether Congress intended enforcement actions to

carry a right to a jury trial, and a number of courts have interpreted that silence as an indication of the intention that suits be equitable in nature. *See, e.g., Wardle v. Central States, Southeast & Southwest Areas Pension Fund,* 627 F.2d 820, 829 (7th Cir.1980); *Nobile v. Pension Committee of Pension Plan,* 611 F.Supp. 725 (S.D. N.Y.1985). However, in the case of statutory silence, the Seventh Amendment requires a jury trial upon demand if the statute creates legal, rather than equitable, rights and remedies, enforceable in an action for damages in the ordinary courts of law. *Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Most courts which have considered this question have concluded that a suit under ERISA is equitable in nature, because the right is based on the law of trusts "which provides a beneficiary with a legal remedy only with respect to money the trustee is under a duty to pay unconditionally and immediately to the beneficiary." *Wardle,* 627 F.2d at 829; *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980); *In re Vorpahl,* 695 F.2d 318 (8th Cir.1982). *See also Berry v. Ciba-Geigy,* 761 F.2d 1003, 1007 (4th Cir.1985) (issue under ERISA was erroneously submitted to jury). Thus, even if the remedy is legal, such as the collection of back benefits, the underlying right is based in trust and remains equitable. It does not trigger the right to a jury trial.

A combination of legal and equitable claims are present in this case, because the state claim for breach of contract requesting money judgment against New York Life is legal in nature. It is clear, however, that where both legal and equitable issues are presented in a single case, any legal issues for which a trial by jury is timely and properly demanded must be submitted to a jury. *Dairy Queen, Inc. v. Wood, U.S. District Judge,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (breach of contract portion of otherwise equitable claim to be submitted to jury). Therefore, those issues at trial which are legal in nature may be presented to a jury.

CONCLUSION

In conclusion, plaintiff's ERISA claims were filed in a timely manner, and ERISA properly governs the employee benefits plan under which she was covered by disability insurance during the course of her employment. The state claims as against the employer are pre-empted by ERISA, but they are not pre-empted as against the insurance company. Plaintiff is entitled to trial by jury on those state claims which are of a legal nature. Finally, punitive damages are inappropriate in this case.