Leonard VOGEL, et al., Plaintiffs,

v.

INDEPENDENCE FEDERAL SAVINGS BANK, et al., Defendants.

Civ. A. No. R–87–1207.

United States District Court,
D. Maryland.

Aug. 5, 1988.

Thomas Hoxie, Francis J. Gorman, Semmes, Bowen & Semmes, Baltimore, Md., for plaintiffs.

David M. Funk, Bryan D. Bolton, Shapiro and Olander, P.A., Baltimore, Md., for defendant Guardian Life Ins. Co. of America.

Gerson B. Mehlman, Whiteford, Taylor & Preston, Baltimore, Md., for defendant Arkin.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Before the Court are motions to dismiss filed by defendants Guardian Life Insurance Company of America (Guardian) and Arkin, Youngentob, Mitzner, DiPietro & Kopp, Inc. (Arkin). Defendants seek dismissal of all counts of plaintiffs' complaint alleging claims against them as well as dismissal of plaintiffs' prayers for extracontractual and punitive damages. The motions have been fully briefed and responded to and the Court now rules pursuant to Local Rule 6(G) (D.Md.1987). For the reasons stated below, the motions will be denied insofar as they seek dismissal of the counts of plaintiffs' complaint naming these defendants and for dismissal of the prayer for extracontractual damages. The motions to dismiss punitive damages, however, will be granted.

The Court approaches these motions aware that at this stage of the proceedings it is called upon to draw conclusions of law but is not making determinations of fact. A motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., is a means for testing the legal sufficiency of a complaint. When deciding the motion, a court must take all well-pleaded material allegations of the complaint as admitted, but conclusions of law or unwarranted deductions of fact are not admitted. A complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented. However, "a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A Moore's Federal Practice § 12.08 at 2271–74 (2d Ed. 1983) (emphasis in original.)

Plaintiffs' allegations can be rather simply stated. Leonard Vogel was a co-founder of Independence Federal Savings Loan where for many years he served as a director, vice-president, and consultant for Independence Service Corporation, a sub-

sidiary. During the course of Vogel's service, the bank enrolled him as a participant in its group health plan. In June of 1982, Vogel was permanently and totally disabled by a stroke and required round-the-clock nursing and medical care. This medical care was very expensive and caused Guardian, as insurer, to pay high claims which later were reflected in Independence Federal's premiums.

In 1985, Leonard Vogel lost his health insurance coverage. This loss occurred when Independence, at the recommendation of Arkin, an insurance broker who had various members of the firm employed by or serving as directors or as agents for both Guardian and Independence, cancelled its Guardian policy and replaced it with a new policy. About a year later, however, Independence renewed its coverage through Guardian, again arranged by Arkin, dropping the policy it had had in the interim. In the meantime, Vogel was not permitted to enroll in Independence's new plan nor was he permitted to convert the insurance he had through Guardian under the group plan into an individual policy with the insurer. Nor, because of his health, was he able to procure health insurance from any other insurer. As a result Vogel and his family incurred large debts for necessary medical care. Vogel died in 1987.

Plaintiffs, the estate and family of Leonard Vogel, assert that the actions of the defendants violate first the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 441 and 1001 *et seq.;* second, state laws regulating insurance; and finally, non-preempted state common law causes of action. They claim various damages as a consequence of defendants' actions. Defendants Arkin and Guardian seek dismissal of all counts alleged against them and also seek dismissal of the claims for extracontractual and punitive damages. These motions, therefore, do not address plaintiffs' complaint as a whole but only those counts within it which seek redress against these particular defendants.

Before reaching the merits of plaintiffs' complaint, it is necessary to address defendant Arkin's claim that law of the case bars suit against it. The firm raises two grounds in support of its argument. First, it contends that the claims made against it are barred as a collateral result of this Court's earlier dismissal of Rudolph Arkin individually as a defendant. Second, the firm argues that most of the counts in plaintiff's second amended complaint are mere resurrections of state law claims that this Court earlier dismissed for being preempted by ERISA.

■ Having considered Arkin's first argument, this Court is unwilling to give broad collateral effect to its dismissal of Rudolph Arkin. The Court has carefully reviewed all materials before it at the time of its prior decision. The motivating reason for the dismissal was an affidavit supplied by Rudolph Arkin which presented assertions of fact which plaintiffs' then retained counsel was unable to controvert. In essence, Mr. Arkin's affidavit asserted he played no discretionary role in the creation, adoption, and management of the employee benefit plan at issue. Plaintiffs' current counsel have uncovered facts which put the Arkin affidavit in a new light, especially concerning Mr. Arkin's role as Chairman of the Board for Independence in the adoption and termination of the plans at issue. At the very least the affidavit is ambiguous concerning Mr. Arkin's role in the matters before the Court. At worst, assuming the newly uncovered facts prove true, the affidavit may even have been deliberately misleading. At this point the Court will give only the narrowest effect to its dismissal of Rudolph Arkin. In any case, the Court is satisfied that plaintiffs have raised valid theories of liability against the firm for the actions of several of its agents besides Mr. Arkin and that naming the firm as a defendant now is not merely an attempt to relitigate issues of Mr. Arkin's personal liability.

■ There is no merit in defendant Arkin's contention that this Court's earlier dismissal of state law claims applies to the theories of liability asserted in the second amended compalint. Defendant simply misperceives the nature of the claims made

in the amended complaint. Plaintiffs' allegations, if found true, would give rise to liability under ERISA, either based on express provisions of the statute or emerging federal common law giving effect to it. Thus the theories of liability represent enforceable law and are not preempted state law causes of action. The theories of liability underlying each count will now be addressed in order.

■ Count II of plaintiffs' amended complaint alleges that defendant Guardian breached its duty under the plan. Guardian asserts that the Count "is a common law claim for breach of an insurance contract" and thus preempted by ERISA under 29 U.S.C. § 1144(a). Defendant is correct to characterize the count as requiring a determination of the parties' respective rights and duties under the insurance contract. However, defendant is mistaken when it states that plaintiffs are asserting here a state law claim. Determining a party's contract rights under a health insurance policy is now the province of federal common law. And a party may properly request such a determination under ERISA. 29 U.S.C. § 1132(a)(1)(B). Thus a federal court may determine and enforce a party's contract rights under a health insurance policy.

ERISA has merely made certain contracts the prerogatives of federal law. Simply stated, ERISA is a comprehensive federal statutory scheme concerned with "employee benefit plans." These plans are divided into two categories. "Employee welfare benefit plans" are defined broadly to cover all provisions by employers of health, vacation, training, and various other benefits. 29 U.S.C. § 1002(1). "Employee pension plans" are defined broadly to cover any employer plan, fund, or program established to provide retirement income or that results in deferral of employees' income for periods extending to termination of employment or beyond. 29 U.S.C. § 1002(2)(A). These plans have been brought within the province of federal law on the following rationale:

> The Congress finds ... that it is therefore desirable in the interests of employ-

ees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

29 U.S.C. § 1001(a).

The statute is a legislative codification of the contract law designed to govern the plans, but treats pension plans distinctly differently from welfare benefit plans. For example, employee pension plans, which entail management of funds of money and thus require the establishment of trusts, receive extensive codification of mandatory provisions. In simple terms, Congress has in essence written these contracts for the parties, or at least provided many of their key terms. The sections of the statute which apply solely to pension plans, welfare benefit plans being expressly excluded, legislate mandatory requirements for the covered plans. Sections 1051 through 1086, for instance, welfare plans expressly excluded by section 1051(1), set forth standards for the creation of vested rights in pension plans, provide the conditions under which rights become nonforfeitable, set accrual requirements, state how the plans shall be funded, as well as setting forth numerous other requirements. These sections are best understood as creating express contract terms that are mandated by law when parties establish such plans.

Some of the remaining sections of the statute apply to both pension plans and welfare plans. Sections 1021 through 1031, for instance, establish reporting and disclosure requirements for the plans. Sections 1101 through 1114 legislate the fiduciary responsibilities of people who create or manage the plans. Section 1131 provides for criminal enforcement. Section 1132 creates a mechanism for civil enforcement. And section 1140 makes it unlawful to interfere with rights protected under the statute.

Therefore, Congress included welfare benefit plans within the scheme of ERISA, but did not provide an extensive array of

mandatory provisions as it did for pension plans. The implication here is that parties retain a greater degree of freedom to contract between themselves as to what benefits will be provided under welfare plans, when and how they will be provided, what rights the respective parties have under the plans, as well as the right to negotiate other provisions as they see fit. In substance welfare benefit plans remain private contracts, with the parties determining what the express terms are. Because they are included in ERISA, determination of the meaning of their terms as well as the means for their enforcement have become a matter of federal law, but this law will only be fleshed out for welfare benefit plans as decisions are issued developing a federal common law to govern them. The statute provides the framework but courts must provide the substantive law.

The United States Supreme Court has expressed it thus:

Congress' specific reference to § 301 of the LMRA to describe the civil enforcement scheme of ERISA makes clear its intention that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a). See also H.R.Rep. No. 93–533, p. 12 (1973), U.S.Code Cong. & Admin.News 1974, p. 4639 reprinted in 2 Senate Committee on Labor and Public Welfare, Legislative History of ERISA 94th Cong., 2d Sess., 2359 (Comm. Print 1976) ("The uniformity of decision which the Act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws"); 120 Cong.Rec. 29933 (1974) (remarks of Sen Williams) (suits involving claims for benefits "will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act"); *id.*, at 29942 (remarks of Sen. Javits) ("[i]t is also intended that a body of Federal sub-stantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans"). The expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop, indeed, the entire comparison of ERISA's § 502(a) to § 301 of the LMRA, would make little sense if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by varying state laws.

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987). One can, therefore, plead a contract claim under ERISA as long as it is claimed as a right provided by federal law and not one claimed under state law.

■ Do the facts plaintiffs plead allege a possible breach of duty by Guardian? Plaintiffs assert there was a contract under which Guardian was obligated to provide Leonard Vogel with health insurance. This obligation, plaintiffs assert, was breached when Guardian refused to allow Vogel to convert to an individual policy when Independence terminated its group policy. Guardian in turn asserts there was no breach of contract because a clause expressly provided a covered person could not convert to an individual policy if his group health insurance ended because the group plan ended.

Resolving the issue requires determining the terms of the contract between the parties and there are several possible outcomes wherein plaintiffs would prevail. For example, Leonard Vogel was provided a benefit booklet which gives no indication any such limitation on a right to convert existed. The applicable law, properly analyzed, might lead to the conclusion that the clause Guardian cites was not properly reported and disclosed under ERISA and therefore could not be one of the express terms of the insurance contract. Alternatively, the Court might be required to hold the clause to be void for being against public policy pursuant to 29 U.S.C. § 1110(a)[1] and thus not an express term of

---

**1.** The section reads: "[A]ny provision in an    agreement or instrument which purports to re-

the contract. Similarly, it may be correct, as plaintiffs assert, that Rhode Island law applies and makes the clause unenforceable, pursuant to 29 U.S.C. § 1144(b)(2)(A) which saves from federal preemption "any law of any State which regulates insurance." Accordingly, Count II of plaintiffs' complaint is not properly resolvable on a motion to dismiss.

■ Count III is a claim based on interference with attainment of plan benefits and is directed at all defendants. Defendant Arkin seeks dismissal on two grounds. First, Arkin argues that Vogel had no contractual right to a continuation of benefits. As noted in the discussion concerning Count II above, such a conclusion is not warranted on a motion to dismiss given the facts as pled. Second, Arkin argues the count must fail because the section on which it is based, 29 U.S.C. § 1140, is directed solely at impairment of the employment relationship underlying attainment of benefits. However, while it is true the section most commonly is applied when an employee is wrongfully terminated to prevent his pension rights from vesting, the language of the statute cannot be read so as to limit its application solely to those situations. The statute explicitly says it is "unlawful" for "any person" to interfere with "the attainment of any right" under the plan. 29 U.S.C. § 1140. Similarly, Guardian argues it is not an "employer" and thus cannot be liable under the section, and that the complaint does not allege it engaged in any of the prohibited actions. The section, however, cannot be limited solely to suits against employers. And the Court is satisfied that a claim of wrongful interference with the attainment of medical

benefits is sufficient to seek redress under the section.

■ Counts VI and VII seek redress from defendants Guardian and Arkin, respectively, for breach of fiduciary duty. Both defendants assert that they cannot be considered fiduciaries, and that even if they could their actions would not constitute a breach of fiduciary duty. In drafting ERISA, however, Congress took a broad view of who could be considered fiduciaries and provided a functional definition: [2]

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). In effect, Congress has put anyone who exercises a discretionary function in the creation, adoption, or management of a covered employee benefit plan under a fiduciary duty. Both Arkin and Guardian performed discretionary functions and thus fall within the scope of a fiduciary duty under ERISA. While termination of an employee welfare bene-

---

lieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a)

**2.** In an earlier Memorandum and Order of October 16, 1987, issued in this case, the Court wrote: "Under ERISA, no fiduciary duty is owed by an officer, director or insurance agent. The fiduciary duty owed is by the 'named fiduciary'—or administrator—of the plan. 29 U.S.C. § 1102 § 1–2." That statement from this Court's earlier memorandum is an incorrect statement of law. Congress wrote ERISA in such a way that anyone who exercises a discre-

tionary function in the creation, adoption, or management of a covered employee benefit plan has a fiduciary duty imposed on him. Subsections 1102(a)(1) and (2) merely make it explicit that every plan shall be run under a fiduciary relationship and give a means for determining at least one person who has that duty. But they do not limit the responsibility for acting under a fiduciary duty solely to the plan administrator. The Court's statement in the earlier memorandum was merely dicta, but since it is incorrect the Court expressly disavows it.

fits plan is not a *per se* violation of the fiduciary duty, the decision to terminate would need at a minimum to be based on a valid business justification. Plaintiffs, though, assert that the plan was terminated solely to end Leonard Vogel's coverage. If true, that would constitute a violation of the obligation of a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104.

■ Count VIII asserts an estoppel theory against both defendants. In brief, plaintiffs assert defendants made respresentations to Leonard Vogel and his family, who relied on the representations to their detriment. Therefore, plaintiffs contend, defendants were estopped from cancelling Leonard Vogel's insurance coverage. Defendant Arkin argues that Count VIII is "an attempt to allege a breach of contract action" and that it is "clearly preempted." However, as noted above, ERISA cases do entail breach of contract suits, and therefore all a plaintiff need do is assert it as a matter of federal law, and not as a remedy afforded under state law, in order to avoid a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted. Since plaintiffs make their claim under federal law they have pled their case properly. Whether ERISA allows estoppel as a basis for relief does not appear to have been directly addressed before, but since estoppel is an equitable doctrine, and 29 U.S.C. § 1132(a) specifically grants equitable powers, estoppel is an appropriate theory for recovery of benefits from an ERISA employee benefits plan.

■ Count IX asserts that defendants conspired to violate ERISA and state laws regulating insurance. The gravamen of the assertion is that Leonard Vogel's medical expenses were burdensome and that defendants conspired together in order to effect cancellation of Vogel's insurance benefits in violation of his rights under ERISA and state laws regulating insurance. Proving that a conspiracy existed to violate a beneficiary's ERISA rights is one means to assert liability against fiduciaries. It can even extend liability to persons who

cannot be considered fiduciaries under ERISA. *See Thornton v. Evans*, 692 F.2d 1064 (7th Cir.1982).

■ Finally, defendants assert that plaintiffs' prayers for extracontractual and punitive damages should be dismissed. Whether or not these two types of damages are recoverable in an ERISA action remains an unsettled issue of law. At least one judge in this district has ruled that punitive damages cannot be recovered at all. *See Trogner v. New York Life Ins. Co.*, 633 F.Supp. 503 (D.Md.1986). In part, this result occurs because Congress, when it drafted the enforcement sections, expressly granted equitable relief as a remedy but did not similarly grant legal relief. 29 U.S.C. § 1132(a). The extent to which a party is entitled to legal relief under the statute is still being debated in the caselaw.

ERISA's civil enforcement section enumerates six instances where suit may be brought, of which four expressly grant individuals prower to bring suit. For our purposes, the following three are relevant:

**(a) Persons empowered to bring a civil action**

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

In *Trogner*, above, Judge Young based his conclusion that punitive damages were

not recoverable under ERISA on *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), in which the Supreme Court said:

> We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.... '[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it....' 'The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'

473 U.S. at 147, 105 S.Ct. at 3093.

The quoted language, however, is dicta. The true holding of the case is much narrower, namely that under section 1132(a)(2) an individual may only bring a section 1109 suit to recover damages on behalf of the plan not damages he himself has incurred. The majority opinion expressly noted it was not considering whether any other ERISA provision authorized recovery of extracontractual damages. 473 U.S. at 139, n. 5, 105 S.Ct. at 3088 n. 5. And a concurring opinion joined by four justices sets forth criteria for lower federal courts to use in determining whether under different sections of the statute "extracontractual damages might be one form of 'other appropriate relief'":

> I believe that, in resolving this and other questions concerning appropriate relief under ERISA, courts should begin by ascertaining the extent to which trust and pension law as developed by state and federal courts provide for recovery by the beneficiary above and beyond the benefits that have been withheld; this is the logical first step, given that Congress intended to incorporate trust law into ERISA's equitable remedies. If a requested form of additional relief is available under state trust law, courts should next consider whether allowance of such relief would significantly conflict with some other aspect of the ERISA scheme. In addition, courts must always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries.

473 U.S. at 157–58, 105 S.Ct. at 3098 (Brennan, J., concurring in judgment).

Following *Massachusetts Mutual*, at least two federal courts have allowed recovery of extracontractual damages and punitive damages under ERISA. *See Smith v. ABS Industries, Inc.*, 653 F.Supp. 94 (N.D. Ohio 1986) (allegation of willful violation of plan is sufficient to state claim for punitive damages); and *James A. Dooley Assoc. Emp. Ret. Plan v. Reynolds*, 654 F.Supp. 457 (E.D.Mo.1987) (punitive damages may be necessary where plaintiff can prove a malicious breach of duty). At this point, therefore, the issue remains unsettled.

Plaintiffs note that their claims involve allegations of willful misconduct, perhaps even malice, on the defendants' part and argue that this fact takes them out of the scope of the dicta in *Massachusetts Mutual*. Further, they argue that the claims they make under section 1140 provide an additional basis for recovery of extracontractual and punitive damages. That section states:

> It shall be unlawful for any person to discharge, fire, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. This section, plaintiffs assert, creates the statutory equivalent of a tortious interference with contract action and extracontractual and punitive damages ought to be found recoverable for violations, making federal law compatible with the action as it has developed at common law, or else there would be no viable means to enforce it.

Having reviewed the parties' arguments, the relevant caselaw, as well as the statute, the Court is persuaded that extracontractual damages are recoverable in an ERISA suit alleging willful misconduct or violations of § 1140's prohibition against interference with protected rights. These damages in effect represent special damages and "are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or conditions." Black's Law Dictionary 354 (5th ed. 1979). They could include, for example, recovery for mental distress or for money loss above and beyond the contractual terms.

Allowing such damages is in line with the Congressional purpose of "establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans, and ... providing for appropriate remedies [and] sanctions." 29 U.S.C. § 1001(b) They also comport well with the express imposition of a fiduciary duty of care and liability for its breach effected by sections 1104 and 1105. It is a basic conclusion in trust law that courts "will give to the beneficiaries of a trust such remedies as are necessary for the protection of their interests." 3 A. Scott, Law of Trusts § 199 at 1638 (1967). While trust law remedies are equitable in nature, they include provisions for monetary damages. *See* G. Bogert and G. Bogert, Law of Trusts and Trustees § 862 (2d ed. 1982); and Restatement (Second) of Trusts §§ 199, 205 (1959). Thus, ERISA's provisions contain an implicit basis for extracontractual damages. *See* Note, Participant and Beneficiary Remedies Under ERISA: Extracontractual and Punitive Damages After *Massachusetts Mutual Life Insurance Co. v. Russell*, 71 Cornell L.Rev. 1014 (1986).

A similar justification, however, cannot be found for punitive damages in an ERISA suit. The basic underlying purposes of punitive damages are to punish and make an example of and thus deter others. ERISA, though, contains many provisions whereby punishment and deter-

rence can be achieved, including a fully range of equitable powers to enjoin actions, reform contracts, remove fiduciaries from their posts as well as authorization for awarding attorney's fees. These provisions in combination with contract and extracontractual damages provide for complete and adequate enforcement of ERISA. Absent a more definitive authorization of punitive damages by Congress or an appropriate appellate court, this Court is reluctant to imply recovery of punitive damages into the statute.

Accordingly, for the reasons stated herein, it is this 5th day of August, 1988, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendants Guardian's and Arkin's motions to dismiss plaintiffs' claims against them are DENIED;

2. That defendants Guardian's and Arkin's motions to dismiss plaintiffs' prayers for extracontractual damages are DENIED;

3. That defendants Guardian's and Arkin's motions to dismiss plaintiffs' prayers for punitive damages are GRANTED; and

4. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.