James G. ROLLO

v.

MAXICARE OF LOUISIANA, INC., et al.

Civ. A. No. 88–2131.

United States District Court, E.D. Louisiana.

Oct. 24, 1988.

Cater & Willis, Jennifer N. Willis, New Orleans, La., for plaintiff.

Mark S. Goldstein, New Orleans, La., for James Rollo.

Brook, Morial, Cassibry, Fraiche and Pizza, Donnald D. Fraiche, Trial Atty., Montgomery, Barnett, Brown, Read, Hammond and Mintz, Stanley McDermott, Jr., New Orleans, La., for Maxicare of La., and Carl E. Kemmerly, III, M.D.

## ORDER AND REASONS

FELDMAN, District Judge.

Plaintiff, James G. Rollo, an employee of Martin–Marietta, was injured in a non-work related automobile accident in October, 1986. At the time of the accident, plaintiff was a member of Martin–Marietta's health care plan; the plan was administered by defendant, Maxicare of Louisiana, Inc., a health maintenance organization. Maxicare in turn contracted with the Browne–McHardy Clinic, an Independent Physicians Association, to provide medical services for plan members such as the plaintiff.

Rollo's state court suit against defendant asserted four grounds of recovery: tortious interference with his physician relationship, breach of contract, intentional infliction of emotional distress, and unfair and deceptive trade practices. Defendants removed the action and thereafter moved for dismissal or summary judgment.

The Court entertained the motion solely to determine if the Court had subject matter jurisdiction over the case under ERISA, and if so, whether plaintiff's state law claims were preempted by ERISA. To the extent that defendants' motion raised other issues, the Court denied the non-ERISA portion of the motion without prejudice, granting defendants leave to re-urge a motion on issues other than preemption after discovery was complete.

On September 9, 1988, the Court entered judgment dismissing plaintiff's suit. The Court found that it had subject matter jurisdiction over the case under ERISA, that all claims asserted in plaintiff's petition were state law claims, that these claims were preempted under ERISA, and that dismissal was warranted because of the absence of any claims under ERISA.

Plaintiff now moves this Court to vacate its judgment of dismissal and allow plaintiff to amend his complaint to assert claims under ERISA. Specifically, plaintiff wishes to assert claims under 29 U.S.C. §§ 1140 and 1132(a)(3)(B). Plaintiff's motion is DENIED.

Fed.R.Civ.Pro. 15(a) provides that a trial court must grant amendments to pleadings "freely when justice so requires." Despite this liberal standard, the Supreme Court has held that a trial court has discretion over whether to grant leave to amend. The Supreme Court has held that in exercising its discretion the trial court can consider factors such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of the amendment*....

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (emphasis added).

The Fifth Circuit has further held that "if a complaint as amended is subject to dismissal, leave to amend need not be given." *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir.1980); *DeLoach v. Woodley*, 405 F.2d 496 (5th Cir.1969). *Accord, Glick v. Koenig*, 766 F.2d 265 (7th Cir.1985); *Sooner Products Co. v. McBridge*, 708 F.2d 510 (10th Cir. 1983); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.1983), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21 (6th Cir. 1980). Thus, jurisprudence in this and other circuits supports denial of plaintiff's motion for leave to amend if his complaint, as amended, would nevertheless be subject to dismissal. The issue, then, is whether a complaint by this plaintiff which asserts entitlement to relief under 29 U.S.C. §§ 1140 and 1132(a)(3)(B), on the same set of facts, would be subject to dismissal. The answer is, yes.

I. Plaintiff's Claim Under Section 1140

Title 29 of the United States Code, Section 1140 provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan....

Plaintiff here claims that "defendants tortiously interfered with plaintiff's rights under the employee benefit plan of which he was a participant, including, but not limited to, his right to receive continuity of care, giving rise to a cause of action against defendants under 29 U.S.C. Section 1140...." The question is whether Section 1140 gives rise to such a cause of action against defendant Maxicare, a health maintenance organization, and defendant Kemmerly, plaintiff's treating physician.

Plaintiff principally relies on the case of *Vogel v. Independence Federal Savings Bank*, 692 F.Supp. 587 (D.Md.1988). In *Vogel*, plaintiff, a participant in an employee group health plan, was permanently disabled by a stroke that required him to have round-the-clock medical care. In 1985, plaintiff lost his health insurance coverage when his employer cancelled its old policy and contracted with a different insurer. He was not allowed to enroll in the new plan, nor was he permitted to convert the insurance he had into an individual policy with the insurer. Because of his poor health, plaintiff was also unable to obtain insurance from another insurer.

Plaintiff sued several defendants, including Rudolph Arkin, the insurance broker who had arranged for plaintiff's employer to cancel the original group health policy through which plaintiff had been insured. Plaintiff sued Arkin under 29 U.S.C. § 1140, and other ERISA provisions. Arkin moved to dismiss the Section 1140 claim, arguing that the section "is directed solely at the impairment of the employment relationship underlying attainment of benefits." The District Court of Maryland rejected Arkin's argument, explaining:

[W]hile it is true the section most commonly is applied when an employee is wrongfully terminated to prevent his pension rights from vesting, the language of the statute cannot be read so as to limit its application solely to those situations. The statute explicitly says it is "unlawful" for "any person" to interfere with "the attainment of any right" under the plan.

Two questions confront this Court in deciding whether or not to follow *Vogel:* First, was the District Court of Maryland correct in construing Section 1140 to apply to non-employer defendants? Second, if the *Vogel* court correctly construed Section 1140, is *Vogel* nevertheless distinguishable from this case so that the statute ought not to apply to defendants in this case even if it might apply in other contexts to some non-employer defendants?

A. *Correctness of the Vogel Decision*

The holding in *Vogel*—that Section 1140 applies to non-employers—has been rejected by other courts that faced the same issue. For example, in *West v. Butler*, 621 F.2d 240 (6th Cir.1980), where a pension fund sued to enjoin secondary picketing

under ERISA, the Sixth Circuit held Section 1140 was inapplicable to the non-employer picketers at issue, even though the picketers might have interfered with the right of employees to protect pension and welfare benefits by continuing to work.

In reviewing the legislative history of the statute, the court found that "Congress had a specific type of problem in mind when it enacted [the statute]," and the court referred to the following Senate Report:

> These provisions were added by the Committee in the face of evidence that in some plans a worker's pension rights or the expectations of those rights were interfered with by the use of economic sanctions or violent reprisals. Although the instances of these occurrences are relatively small in number, the Committee has concluded that safeguards are required to preclude this type of abuse from being carried out and in order to completely secure the rights and expectations brought into being by this landmark reform legislation.

S.Rep. No. 93–127, 93d Cong., 2d Sess., *reprinted at* 1974 U.S.Code Cong. & Admin.News pp. 4639, 4838, 4872.

The court's reading of the legislative history led it to conclude that "the prohibitions were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." 621 F.2d at 245. The Court further observed that "discrimination, to violate § 510, must affect the individual's employment relationship in some substantial way." *Id.* at 245–46.

Similarly, in *Adams v. Koppers Co., Inc.,* 684 F.Supp. 399 (W.D.Pa.1988), where former employees filed suit against their employee benefit plan for violation of 29 U.S.C. § 1140, the court held that the plan itself was not a proper defendant under that statute. Specifically, the court stated, "The legislative history of § 1140 reveals that Congress intended the section to prevent unscrupulous *employers* from discharging employees to prevent benefits from vesting. 119 Cong.Rec. 30374." *Id.*

at 401. (Emphasis in original). The *Koppers* court also relied on *West.*

Finally, the Fifth Circuit, in *Clark v. Resistoflex,* 854 F.2d 762 (5th Cir.1988), did not adjudicate but recognized the *West* distinction between cases involving employers and those involving non-employers sued under Section 1140. The Fifth Circuit described *West* as holding "that Section 510 did not support [a claim by pension fund trustees seeking to enjoin picketing] and used ERISA's legislative history to clarify the distinction between the non-employer interference at issue in *West* and employer interference proscribed by ERISA."

Thus, although *dictum,* the Fifth Circuit's statement in *Clark* implies some acknowledgment of an employer/non-employer dichotomy in Section 1140, and suggests that suits against non-employers are treated differently under the section. This Court is similarly persuaded that Section 1140 was not intended to apply to non-employers, contrary to the *Vogel* court's interpretation. The policy thrust of Section 1140 seems to target the employment relationship out of which employee benefits arise. The text of Section 1140 speaks of conduct which, functionally, can only be completed by one who is an employer of the aggrieved person.

### B. *Distinguishing Vogel From This Case*

Even if the *Vogel* court were correct in construing Section 1140 as applicable to Arkin, an application of Section 1140 would be inappropriate to defendants in this case, Maxicare and Dr. Carl Kemmerly. Unlike Arkin, who served as board chairman of plaintiff's employer, and who personally advised plaintiff's employer to terminate plaintiff's insurance policy, defendants here had no executive or discretionary relationship with Mr. Rollo's employer. In fact, plaintiff's claim against defendants seems to raise only the issue of entitlement to certain benefits under the plan, not whether defendants discriminated against him in favor of someone else.

In *Vogel,* Arkin was intimately involved with the management activities of plain-

tiff's employer. Thus, the Maryland court could well have perceived that Arkin assumed the role of plaintiff's employer, at least for purposes of deciding to terminate plaintiff's health insurance benefits. The court may have been impressed by a perception of Arkin's quasi-employer status in holding Section 1140 applicable to him.

Defendants here cannot be perceived by the Court to have any quasi-employer character, because they had no executive or managerial nexus to plaintiff's employer comparable to that of Arkin in *Vogel*. This case is distinguishable from *Vogel* on that basis. Thus, even assuming that *Vogel* was correctly decided, which the Court is unwilling to do for the reasons earlier expressed, it would not apply to this case.

## II. ERISA Does Not Provide for Extra–Contractual Relief

Whether or not Section 1140 reaches non-employers, it would seem as though the issue of plaintiff's entitlement to extra-contractual damages is itself dispositive. Plaintiff urges that 29 U.S.C. § 1132(a)(3)(B) also supports his request to amend the Complaint to request extra-contractual damages. But the clear weight of precedent teaches that extra-contractual damages are not recoverable under ERISA.

In the most celebrated Supreme Court ERISA case, *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Court held that a beneficiary can not recover either compensatory or punitive damages under ERISA. Specifically, the Court explained, "[T]he entire text of § 409 (the enforcement provision of 29 U.S.C. § 1132) persuades us that Congress did not intend that section to authorize any relief except for the plan itself. In short ... we do not find in § 409 express authority for an award of extracontractual damages to a beneficiary." *Id.* at 144, 105 S.Ct. at 3091. Because the Court explicitly reserved the question of whether any provision other than § 409(a) authorized recovery of extra-contractual damages, *Russell*, by itself is not controlling; but the Supreme Court has again strongly reiterated its views, and later cases have held that Congress did not

intend Section 1132(a)(2) to authorize extra-contractual relief.

In *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court had another occasion to explain the scope of ERISA's enforcement provisions. As in this case, the Court was focused specifically on Section 502 of ERISA, 29 U.S.C. § 1132(a)(3), which provides:

> A civil action may be brought—
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

In construing this provision, the Supreme Court rejected plaintiff's common law breach of contract and tort claims against the insurance company that issued his employer's group insurance policy, because the Court found that Congress had never intended to authorize such recovery under ERISA. As the Court explained:

> Under the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, or to clarify rights to future benefits. Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits. A participant or beneficiary may also bring a cause of action for breach of fiduciary duty, and under this cause of action may seek a removal of the fiduciary.

> . . . . .

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined

if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . .

The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legislative history of the civil enforcement provision.

*Id.* 107 S.Ct. at 1556–57.

After *Pilot Life*, the Ninth Circuit, in *Johnson v. District 2 Marine Engineers*, 857 F.2d 514 (9th Cir.1988) similarly held that extra-contractual damages were not recoverable under Section 1132(a). In *Johnson*, the court did not allow the plaintiff to amend his complaint to assert a cause of action under Section 1132(a) because the plaintiff sought extra-contractual damages and the court found such damages were unavailable under ERISA.

In this case, plaintiff does not seek injunctive relief against a plan administrator, nor does he seek benefits due under his health plan or removal of the plan fiduciaries. Plaintiff seeks extra-contractual damages for "tortious interference" with his rights under the plan and other related relief. This Court agrees and the case literature without doubt teaches, that such damages are not recoverable under ERISA, and, therefore, declines to follow the *Vogel* court's holding to the contrary.

The Supreme Court in *Pilot Life* clearly stated that the relief Congress expressly provided in Section 1132 is exclusive. This Court will not usurp the Legislature's province by giving the plaintiff leave to assert entitlement to extra-contractual damages that Congress has not seen fit to provide. *See also, Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1464 (5 Cir.1986).

### Conclusion

As this Court noted earlier, a motion for leave to amend, made after a Court's entry of a dismissal judgment, will be denied if the proposed amendment could not survive a motion for dismissal. Plaintiff's two amendments which would assert causes of action under Sections 1140 and 1132(a) would not survive such a dismissal motion.

Congress did not intend Section 1140 to apply to non-employers such as Maxicare and Dr. Kemmerly, nor did Congress intend to authorize awards for extra-contractual damages, such as plaintiff seeks here, under ERISA. Therefore, plaintiff's motion requesting this Court to vacate its earlier dismissal and for leave to amend his complaint to add causes of action under Sections 1140 and 1132(a) is DENIED.