Therese **JOHNSON** and David Johnson, her husband, Plaintiffs–Appellants,

v.

**DISTRICT 2 MARINE ENGINEERS BENEFICIAL ASSOCIATION—ASSOCIATED MARITIME OFFICERS, MEDICAL PLAN, Defendant–Appellee.**

No. 87–1805.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1988.

Decided July 11, 1988.

As Amended Sept. 8, 1988.

Roger O'Sullivan and Steven C. Dawson, Thur, Dawson & O'Sullivan, Scottsdale, Ariz., for plaintiffs-appellants.

James J. Trimble, Fennemore, Craig, Von Ammon, Udall & Powers, Phoenix, Ariz., for defendant-appellee.

Before ANDERSON, NOONAN and THOMPSON, Circuit Judges.

PER CURIAM:

As a result of David Johnson's employment, he and his wife Therese (collectively "Johnsons") became members of the District 2 Marine Engineers Beneficial Association—Associated Maritime Officers, Medical Plan ("Plan"). As members of the Plan, they were entitled to certain costs incurred in applicable medical treatment. The Plan is an employee benefits plan, which consists of a "Fund" jointly administered by a board of trustees of multiple employer and union representatives, and is governed by ERISA. 29 U.S.C. § 1001, *et seq.* (1982).

In 1985, Therese Johnson was diagnosed as having biliary cirrhosis. The only medical means available to ensure her survival was a liver transplant. In order to obtain the transplant, the hospital required Johnson to show that either she or her medical insurance could cover at least 80% of the estimated cost of the transplant. Upon her application to provide coverage, the Plan denied the payment of benefits on the ground that a liver transplant was "experimental surgery" and that such procedures were excluded from coverage. Later, the trustees amended the Plan to exclude transplant procedures, specifically liver transplants, from coverage as experimental surgery. Because of the Plan's denial of coverage, the Johnsons were forced to sell their family home and other property to pay for the required liver transplant.

Johnsons then brought the present suit in state court. The Plan removed the case to federal court under 29 U.S.C. § 1132(e)(1). Johnsons alleged in Count 1 of the complaint a violation of ERISA under 29 U.S.C. § 1132(a)(1)(B) in that the denial of coverage was improper, arbitrary and capricious. In this, they alleged amendment of the Plan by the trustees was done to exclude her particular required procedure. The Plan contended the procedure was always excluded and the amendment was simply to clarify the existing language in the Plan. Counts 2 and 3 of the complaint alleged fraud and intentional infliction of emotional distress in denying Johnsons medical coverage.

The district court dismissed Counts 2 and 3 on the ground that ERISA preempted state law extra-contractual remedies. Count 1 was dismissed without prejudice for failure to exhaust the administrative remedies set forth in the Plan. After exhausting her remedies, Johnson moved for summary judgment on Count 1, requested reconsideration on Counts 2 and 3, and sought to amend the complaint to add Count 4 which also sought relief under 29 U.S.C. § 1132(a)(1)(B).

The district court granted summary judgment for the Plan on Count 1, finding: the trustees decided to amend the Plan before Johnson submitted her request for coverage, the trustees' interpretation of

the Plan's coverage was reasonable, and that denial of coverage was therefore not arbitrary and capricious. The court reaffirmed its earlier dismissal with prejudice of Counts 2 and 3 since these claims were preempted by ERISA. The court then denied the motion to amend to add a Count 4. Amendment was denied because Count 4 sought extra-contractual damages which were also preempted by ERISA and therefore amendment was futile.

Johnsons appeal the order of dismissal and summary judgment and denial of the right to amend. They argue denial of coverage was arbitrary and capricious and that ERISA does not preempt the state law of fraud, intentional infliction of emotional distress and punitive damages.

## ANALYSIS

### A. Arbitrary and Capricious Denial of Benefits

■ Johnson contends the Plan trustees violated § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), in denying her benefits because the refusal to provide coverage for a liver transplant was arbitrary and capricious. The district court found as fact, according to affidavits submitted, that the trustees never intended the Plan to cover transplants, that the terms of the Plan were silent with respect to coverage and that the trustees decided to amend the Plan to clarify noncoverage of transplant surgeries before Johnson requested coverage. [ER:31 at 4].

As a reviewing court, we can reverse a decision of an ERISA plan administrator only if the decision was arbitrary, capricious, made in bad faith, not supported by substantial evidence or erroneous as a matter of law. *Nevill v. Shell Oil Co.*, 835 F.2d 209, 211 (9th Cir.1987); *McDaniel v. National Shopmen Pension Fund*, 817 F.2d 1370, 1373 (9th Cir.1987) (citing *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1152 (9th Cir.1986)). A decision is not arbitrary or capricious if it is based on a reasonable interpretation of the plan's terms and was made in good faith. *Id.*

ERISA requires a plan administrator to "discharge his duties ... in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Under the Plan, the trustees expressly reserved the right "to terminate or to amend either the amount or conditions with respect to any benefit, even though such termination or amendment affects claims which have already accrued." [Art. XIII(1)].

Johnsons not only argue that the trustees acted in bad faith in that their benefits were requested before the trustees decided to amend the Plan; they also argue the Plan was first ambiguous with respect to liver transplants and that the subsequent amendment, while justified to clarify the ambiguity, was not justified to solve the Plan's financial problems.

A list of sample surgical operations covered by the Plan was referred to in Schedule B. The list was attached. Liver transplants were not included in this sample list. A footnote to Schedule B stated that: "A complete listing is available at the Brooklyn, N.Y. and Toledo, Ohio offices of the Plan." The complete listing is very detailed, and does not include liver transplants. The Plan trustees' interpretation that liver transplants were not covered by the Plan is reasonable in light of these Plan provisions.

In addition to the coverage provisions of the Plan, the Plan provided that it did not cover "experimental surgery." We analyze these words according to their plain meaning. *McDaniel*, 817 F.2d at 1373. Johnsons argue "experimental surgery" is ambiguous. The argument is well taken. Given the plethora of surgical procedures, the broad term of "experimental" could include many areas. In the context of modern medicine, the term "experimental" seems clearly ambiguous on its face.

Since the plain language of "experimental" does not indicate whether liver transplants are covered, we must resolve the ambiguity in favor of the trustees' interpretation if it is reasonable. *McDaniel*, 817 F.2d at 1373. Can "experimental surgery" be reasonably interpreted to exclude

liver transplants? We believe it can. First, this procedure is not covered under the listed surgical operations. Not being within this complete listing, it is reasonable to conclude that the procedure is not covered, and that such an uncovered procedure may be within the excluded "experimental surgery" provision of the Plan. Second, it is not unusual for the cost of experimental procedures to be extremely high. Exorbitant cost may be some indication of the experimental nature of a uniquely expensive procedure, in this case a liver transplant.

Plan trustees are required to discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). At the same time, however, they have a duty to keep the Fund financially stable. "[T]he purpose of a Fund is to provide benefits to as many intended beneficiaries as is economically possible while protecting the financial stability of the Fund." *Elser v. I.A.M. National Pension Fund,* 684 F.2d 648, 656 (9th Cir. 1982).

Here, the Plan was faced with reduced contributions due to the general decline of the maritime industry. By 1984 the Plan was running a $12.7 million deficit. The acts of the trustees were valid under the terms of the Plan. The acts were also necessary to maintain the Plan's financial stability. The trustees' decision to amend the Plan to clarify "experimental" by specifically excluding transplants was made before Johnson formally applied for coverage.

The affidavits show the trustees' action was reasonable. Denial of coverage was not arbitrary and capricious and the district court therefore did not err in granting the Plan summary judgment on Count 1 of the complaint.

### B. Preemption

■ Counts 2 and 3 of Johnson's complaint allege fraud and intentional infliction of emotional distress in the denial of benefits by the Plan. The district court dismissed these counts with prejudice as preempted by ERISA.

A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986). The district court's decision that ERISA preempted Johnson's state law claims is a conclusion of law and is reviewable *de novo. Nevill v. Shell Oil Co.,* 835 F.2d 209, 211 (9th Cir.1987).

In *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court unanimously held ERISA preempts state law tort and contract actions for improper processing of a claim for benefits under an insured employee benefit plan. *Id.,* 481 U.S. at ——, 107 S.Ct. at 1558, 95 L.Ed.2d at 54. The holding of *Dedeaux* was based upon § 514(a) of ERISA which provides:

> "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."

29 U.S.C. § 1144(a). The reason the Supreme Court construed § 514(a) broadly, thereby preempting state tort and contract claims, was that by enacting ERISA Congress intended to deliberately and expansively establish pension plan regulation as an exclusively federal concern. *Id.,* 481 U.S. at ——, 107 S.Ct. at 1551, 95 L.Ed.2d at 46.

This court has followed *Dedeaux,* finding state common-law causes of action for breach of contract, for breach of duty of good faith and fair dealing, and for fraud, which relate to an employee benefit plan, are preempted by ERISA. *Nevill,* 835 F.2d at 212.

On the basis of preemption, the district court properly dismissed Johnsons' Count 2 and 3 claims. Causes of action for fraud and emotional distress are clearly state common-law claims for enforcement of plan benefits, matters regulated by ERISA. *Id.* Johnsons' claims are indistinguishable from

the improper processing claims held preempted by ERISA in *Dedeaux.* Given the preemptive effect of ERISA, Johnsons failed to state a claim under Counts 2 and 3. On the facts asserted, they were not entitled to relief.

## C. Extra-contractual Relief

■ The district court denied Johnsons' motion to amend their complaint as futile. Johnsons sought to amend the complaint to include Count 4: a claim under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), for extra-contractual and punitive relief based on the statute itself.

We review denial of leave to amend a complaint after a responsive pleading has been filed for abuse of discretion. *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983).

In *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held a beneficiary could not recover extra-contractual damages, either compensatory or punitive, under § 409(a) of ERISA, 29 U.S.C. § 1109(a) (incorporated by § 502(a)(2), 29 U.S.C. § 1132(a)(2)), against a fiduciary for improper processing of benefit claims. *Id.* at 148, 105 S.Ct. at 3093. The basis for denial of such relief was that congressional intent showed there was no desire to imply a cause of action for extra relief and none was provided expressly. *Id.* at 138, 105 S.Ct. at 3088. However, the Court explicitly reserved the question of whether any provision other than § 409(a) authorized recovery of extra-contractual damages. *Id.* at 139 n. 5, 105 S.Ct. at 3088 n. 5.

While *Russell* is not controlling in that its application for relief based on other sections was left open, we held in *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986), that the rationale of *Russell,* i.e., ERISA's preemptive effect and legislative history, applied equally to § 502(a)(3), 29 U.S.C. § 1132(a)(3), and as such there was no provision for extra-contractual damages under that section either. *Id.* at 537. *Cf. Powell v. Chesapeake & Potomac Telephone Co.,*

780 F.2d 419 (4th Cir.1985) (following *Russell* to find § 1132(a)(2) denial of extra-contractual relief applied equally to § 1132(a)(3)).

Johnsons attempted to amend their complaint to add a claim for extra-contractual damages under 29 U.S.C. § 1132(a)(3). This relief is not available under *Sokol.* Moreover, while the question was left open in *Russell,* the preemptive effect of ERISA, used as a basis for the *Russell* decision, applies equally to § 1132(a)(3). Unless the Supreme Court indicates otherwise, there is no need to reexamine our analysis or holding in *Sokol.* Unlike what the Johnsons contend, *Sokol* does not conflict with *Bise v. International Brotherhood of Electrical Workers,* 618 F.2d 1299 (9th Cir.1979). The punitive damages allowed in *Bise* were based on the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, where no clear congressional intent to the contrary was shown in the legislative history. *Id.* at 1305 n. 6.

Even if the Johnsons would have been permitted to amend their complaint, the claim under § 1132(a)(3) would have been barred by *Sokol.* On this basis, the district court did not err in denying the motion to amend. *United States v. Webb,* 655 F.2d 977, 980 (9th Cir.1981) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

## CONCLUSION

The acts of the trustees are entitled to deference unless shown to be arbitrary or capricious. The trustees were entitled to clarify the ambiguity and to take action necessary to maintain the Fund's financial stability.

It is clear Johnsons' remaining claims were preempted. The district court did not err in dismissing counts 2 and 3 of the complaint and denying the right to amend to add count 4 for extra-contractual relief. The summary judgment and dismissal by the district court are affirmed.

AFFIRMED.