861 F.2d 217
 57 USLW 2360, 10 Employee Benefits Ca 1556
 Betty PILON; Paul Pilon, Plaintiffs-Appellants,
v.
RETIREMENT PLAN FOR SALARIED EMPLOYEES OF GREAT NORTHERN
NEKOOSA CORPORATION and Employee Benefit Plan; Benefit
Administration Committee of Great Northern Nekoosa
Corporation; Mail-Well Envelope Company, a company of Great
Northern Nekoosa Corporation; a Delaware corporation; John
Does I-X and Black Corporations I-X, Defendants-Appellees.
 No. 87-2452.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 12, 1988.
Decided Nov. 7, 1988.
 
 J. Jeff Richardson, Trew & Woodford, Phoenix, Ariz., for plaintiffs-appellants.
 Marshall W. Anstandig, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before SCHROEDER, NOONAN and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 Pilon appeals the district court's grant of summary judgment in favor of the administrator of his Retirement Plan, who had determined that retirement benefits were subject to a cap which Pilon disputes. We reverse and remand for trial.FACTS
 
 
 2
 Paul Pilon worked for Southwest Envelope Company ("Southwest") from 1959 until 1984. His primary duties lay with the sales force; indeed, he was the company's most successful salesman.
 
 
 3
 Until 1975, Pilon worked largely on commission, earning about $75,000 a year. Tom Alton, who became president of Southwest in 1970, earned a salary smaller than this amount. In 1975, Pilon's annual compensation scheme was changed. Under the new scheme, Pilon was given the title of vice-president, and his compensation was set at a flat $50,000 plus expenses for each year until his retirement. Alton and Pilon did not discuss any effect these changes may have had on his pension plan benefits.
 
 
 4
 Pilon participated in a series of retirement plans (collectively, "the Plan") sponsored by Southwest. He continued to accrue retirement benefits until his 65th birthday in 1979. Although the Plan changed from time to time, the essential provisions computed benefits for "salaried employees" on straight salary with no cap, and for "salesmen and sales managers" on salary and commissions up to a $24,000 cap. The Plan also gave the Benefits Committee "sole and exclusive power ... to determine the rights of all persons to benefits under the plan."
 
 
 5
 Between 1975 and 1984, Southwest alleges, it told Pilon many times that his benefits would be calculated on earnings subject to the $24,000 cap. However, none of these statements appear in the record.
 
 
 6
 After Pilon retired in 1984, he challenged the benefits calculation. He argued that he should be considered a salaried employee under the Plan because he was on straight salary; the cap would thus not apply. The Plan administrator ruled that Pilon was a "sales manager or salesman" within the meaning of the Plan, and was hence subject to the cap.
 
 
 7
 Pilon filed this action in state superior court asking that the Plan administrator's determination of benefits be overturned. Defendants removed it to Arizona federal district court.
 
 
 8
 After a hearing, the district court entered an order granting summary judgment for the administrator, holding that the administrator's decision to classify Pilon as a sales manager or salesman rather than a salaried employee for pension purposes was not arbitrary and capricious. Pilon now timely appeals.
 
 DISCUSSION
 
 9
 The district court properly grants summary judgment only if there is no genuine issue of material fact and the moving party should prevail as a matter of law. Fed.R.Civ.P. 56(c); Dockray v. Phelps Dodge Corp., 801 F.2d 1149, 1152 (9th Cir.1986). We review the district court's grant of summary judgment de novo. Id.
 
 
 10
 Current Ninth Circuit law is somewhat unclear on the standard of review to be applied to decisions of the administrator of an employee benefit plan. Most cases have held that, absent special circumstances, the court should reverse such a decision only if it was arbitrary and capricious, made in bad faith, unsupported by substantial evidence, or erroneous as a matter of law. See, e.g., Johnson v. District 2 Marine Eng'rs. Beneficial Ass'n., 857 F.2d 514, 516 (9th Cir.1988). An administrator's decision is ordinarily not arbitrary or capricious if it is a reasonable interpretation of the plan's language and is made in good faith. Id.
 
 
 11
 However, the trustee of an employer-administered plan such as the one here serves two masters: as trustee, he is obliged to act in the best interests of plan beneficiaries, but as a businessperson, he must also tend to his profit margin. Scholars and some courts have recently suggested that the two goals do not always coincide. See, e.g., Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 137-40 (3d Cir.1987), cert. granted, --- U.S. ----, 108 S.Ct. 1288, 99 L.Ed.2d 498 (1988); Van Boxel v. Journal Co. Employees' Pension Trust, 836 F.2d 1048, 1049-50 (7th Cir.1987); Judicial Review of Fiduciary Claim Denials Under ERISA, 71 Cornell L.Rev. 986 (1986).
 
 
 12
 Our own court has used the "arbitrary and capricious" language, but has occasionally given closer scrutiny to the decision of a plan administrator who is also the employer, as here. In Jung v. FMC Corp., 755 F.2d 708, 711-12 (9th Cir.1985), we held that if "the employer's denial of benefits to a class avoids a very substantial outlay, the reviewing court should consider that fact in applying the arbitrary and capricious standard of review. Less deference should be given to the trustee's decision." Similarly, in Fielding v. International Harvester, 815 F.2d 1254, 1256 (9th Cir.1987), we gave "less deference" to the decision of an employer-administrator where it affected him financially. And in Dockray, we extended this stricter scrutiny in "special circumstances" to reverse a summary judgment granted to an administrator whose loyalties may have been torn, not by financial considerations, but by an "unusually bitter and violent" strike. See 801 F.2d at 1152-53.
 
 
 13
 A recent case refused to apply this "less deference" standard, however, to the decision of an employer administered ERISA plan where the conflict at issue was essentially between "past and future beneficiaries" and did not implicate a "serious conflict between the interests of the employer and the beneficiaries." Oster v. BARCO of Cal. Employees' Retirement Plan, 859 F.2d 1345 at 1347-48 (9th Cir.1988) (court affirming summary judgment in favor of Plan's Managing Committee because denial of claimant's request for payment of retirement benefits in a lump sum was not arbitrary, capricious or unreasonable). We note that the conflict here is not like Oster where the complaining beneficiary did not suffer a reduction in benefits but merely protested about the form in which he was to receive his benefits. See Oster, at 1347-48.
 
 
 14
 Here, Pilon, a long-term successful Southwest employee, had been faced with new management's attempts to reorder the company's compensation levels. He claims benefits from the Plan administered and funded by that same management. The circumstances surrounding the decision as to Pilon's benefits hence warrant the closer examination we used in Jung, Fielding, and Dockray.
 
 
 15
 We review the administrator's decision first under the plain meaning of the plan, then under other guidelines this court has also used.
 
 A. Plain Meaning
 
 16
 The trustee of a pension plan must abide by the plain meaning of the plan's terms. We will find an application of plan provisions arbitrary and capricious if it is clearly in conflict with the plan's plain language. Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1307 (9th Cir.1986). Here, the plain meaning is of limited guidance: at Pilon's retirement, he was clearly both a salaried employee and a salesman.
 
 
 17
 The district court apparently relied on a grammatical analysis in granting summary judgment for the administrator. It reasoned that the class of "salaried employees" referred to a general group, while the term "salesmen and sales managers" carved out a narrow, specific exception to it. However, this reading looks at the text in a vacuum. For a better understanding of the Plan's distinction, we look beyond the bare language to the Plan's interpretation.
 
 B. Interpretation
 1. Good Faith
 
 18
 We recognize here that "countervailing tugs of divided loyalty," Dockray, 801 F.2d at 1152, raise the possibility that the administrator's determination was not made "for the sole and exclusive benefit" of the Plan beneficiaries. 29 U.S.C. Sec. 186(c)(5). A decision not made in good faith is more likely to be judged arbitrary and capricious.
 
 2. Consistency of Application
 
 19
 If a decision is consistent with prior decisions of a plan's administrator regarding identically situated claimants, it is less likely to be arbitrary and capricious. See, e.g., Harm v. Bay Area Pipe Trades Pension Plan Trust Fund, 701 F.2d 1301, 1305-06 (9th Cir.1983); Gordon v. ILWU-PMA Benefit Funds, 616 F.2d 433, 440 (9th Cir.1980). Here, Pilon is one of only two Southwest employees with dual status, so there are no prior cases to which we can compare the administrator's determination. Thus, we cannot find the determination arbitrary and capricious solely on this basis. However, because we must view the evidence in the light most favorable to Pilon, we find no support for the administrator's position on this ground.
 
 3. Rational Nexus
 
 20
 A rule that denies benefits to employees who have worked a substantially greater time than others who have received benefits shifts the burden to the trustees to show a rational connection to the purpose of the plan as a whole. Harm, 701 F.2d at 1305; see also Gordon, 616 F.2d at 440. Here, we find no logic tying the administrator's choice to cap Pilon's benefits to its overall purpose. Indeed, on reviewing the grant of summary judgment, we accept Pilon's proffered rationale that sales personnel are capped because, on commission, they can more easily provide for their own retirement. The administrator's determination therefore may be arbitrary and capricious because it bears no relation to the Plan's overall purpose of tailoring benefit awards to employees' likely needs.
 
 4. Drafter's Intent
 
 21
 Bolstering Pilon's "rational nexus" argument is evidence that only one other Southwest sales manager was on straight salary. It is therefore likely that the Plan was based on the assumption that all sales personnel earned commissions.
 
 
 22
 Tucker, former CEO of Southwest and the Plan's drafter, offered further evidence that the Plan was meant to differentiate among the classes of employee by method of compensation, not by job function. Again, because we must now view the evidence in the light most favorable to Pilon, we find that the administrator's determination may have been arbitrary and capricious on this ground.
 
 CONCLUSION
 
 23
 We conclude that the special circumstances presented here compel us to question whether the administrator's decision is entitled to the deference accorded by the district court. On closer review, we find that material issues of fact regarding the good faith of the administrator's decision exist. We therefore reverse the summary judgment in favor of the administrator and remand for trial determination of the propriety of the benefits calculation. We note that, at trial, Pilon retains a heavy burden of persuasion: he must show that the administrator's decision was arbitrary and capricious, unsupported by substantial evidence or law, or made in bad faith.
 
 
 24
 We do not award attorney fees to either party.
 
 
 25
 REVERSED AND REMANDED.
 
 
 26
 SCHROEDER, Circuit Judge, specially concurring.
 
 
 27
 I concur in the result. The language of the Plan is ambiguous in its application to the plaintiff. As a salaried salesman, he fits arguably within both the sales personnel classification and the salaried personnel classification. It appears that the plan is administered by representatives of the employer. There is evidence in the record from which a trier of fact could infer that the plaintiff accepted a salaried position with the understanding that he would receive more beneficial retirement benefits in return for reduced income. There thus is a triable issue as to whether that decision to treat him as a salesperson and pay smaller benefits was arbitrary, capricious or motivated by bad faith. In reaching this conclusion, we do not expand the scope of our review of decisions made in the course of administering employee benefit plans.