Kathleen T. FILARY, a single woman, and Kendra Filary, a single woman, Plaintiffs,

v.

GENERAL AMERICAN LIFE INSURANCE COMPANY, a Foreign Corporation, United Standard Management Corporation Group Insurance Plan, John Doe, United Standard Management Corporation Group Insurance Plan Administrator, John Does and Jane Does numbered 2 through 10, and XYZ Corporations numbered A through J, Defendants.

No. CIV 88–83 PHX CLH.

United States District Court, D. Arizona.

May 12, 1989.

Phillip H. Stanfield, Phoenix, Ariz., for plaintiffs.

Carmen A. Chenal, Phoenix, Ariz., for defendants.

### MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

The plaintiffs, Kathleen T. Filary ("Filary") and her dependent, Kendra Filary ("Kendra"), brought this action against the defendant General American Life Insurance Company ("General American") for reimbursement of medical expenses they claim were covered by a group medical benefit plan issued to Filary's employer, United Standard Management Corporation ("United Standard"). General American has moved for summary judgment. The motion will be granted.

### BACKGROUND

Filary was employed by United Standard, the holder of a group medical benefit plan policy provided by General American and administered under ERISA.

Kendra was admitted to St. Luke's Medical Center in January 1984, based on a diagnosis of "depression psychosis and cannabis dependence." She remained a patient at St. Luke's until March 10, 1984. The admission staff at St. Luke's contacted Ms. Osbon, an employee of United Standard, to verify coverage for Kendra's treatment. Ms. Osbon confirmed that treatment for alcohol or chemical dependency was covered.

Filary filed a medical expense claim for payment of the expenses incurred in Kendra's treatment while a patient at St. Luke's in the amount of $20,440.73. General American paid $14,848.26 toward the total bill, but refused payment for charges designated as "Milieu Therapy" in the amount of $3,358.50 and "Speech Therapy" in the amount of $1,700.

Initially, these two charges were rejected for payment on the basis of a policy term which excludes claims for "injury or sickness arising out of the use of (a) narcotics, (b) hallucinogens, (c) barbituates, (d) marijuana, (e) amphetamines or similar drugs or substances." Subsequently, American General gave two additional reasons for the denial of benefits for the milieu and speech therapy charges. The denial of the claim for speech therapy was based on a policy exclusion which provided for the payment of:

(L) Charges for the services of a qualified speech therapist if such charges are made for speech therapy used for the purposes of correcting speech loss or damage which:

(1) is due to a sickness, other than a functional nervous disorder, or surgery due to such sickness. . . .

The denial of the claim for milieu therapy was based on a policy exclusion for charges related to "psychological testing, counselling and group therapy."

## STANDARD OF REVIEW

■ Plaintiffs have brought suit to enforce rights and recover benefits under an ERISA regulated health care benefit plan. Their action is therefore governed by 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co., v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

Since General American's denial of coverage was based on their discretionary authority to construe the terms of the plan, the denial of coverage must be upheld unless it was arbitrary, capricious, made in bad faith, not supported by substantial evidence or erroneous as a matter of law. *See Johnson v. District 2 Marine Engineers Beneficial Association,* 857 F.2d 514 (9th Cir.1988). A decision is not arbitrary or capricious if it is based on a reasonable interpretation of the plan's terms and was made in good faith. *Id.*

## DENIAL OF CLAIM FOR MILIEU THERAPY

■ A medical authority has defined milieu therapy as consisting of "[s]ocioenvironmental therapy, usually in a hospital setting." Campbell, Psychiatric Dictionary (Oxford University Press 1981) at 649. "Group meetings that encourage participation in information sharing are a prominent feature of milieu therapy, not as ends of themselves but as a way of achieving the therapeutic goals." *Id.* at 650. Group process (sensitivity training, family therapy, psychodrama, etc.) is listed as one of the techniques that may be used in milieu therapy along with other types of individual treatment. *Id.*

The denial of Filary's claim for charges relating to Kendra's milieu therapy is a reasonable interpretation of the policy term excluding coverage for charges related to "Psychological testing, counselling and group therapy."

## DENIAL OF CLAIM FOR "SPEECH THERAPY"

■ Kendra's attending physician, described in a letter to United Standard's Insurance Supervisor, the nature of the "Speech Therapy" treatment Kendra received while a patient at St. Luke's:

As part of her treatment she was ordered to have "speech therapy," which was really a speech and audiology examination which was followed by individual tutoring related to learning disabilities that Kendra has. Therefore, the "speech therapy" was really another form of treatment to overcome disabilities which she already had rather than speech therapy per se.

In denying Kathleen's claims for payment of the charges related to Kendra's speech therapy, Great American relied on a policy term which permits coverage "for speech therapy used for the purpose of correcting speech loss or damage which . . . is due to a sickness, other than a functional nervous disorder, or surgery due to such sickness."

Great American claims that Kendra's "speech therapy" was used for the purpose of correcting speech loss due to a functional nervous disorder and is therefore not covered under the terms of the policy.

The operative word for determining whether Kendra's treatment is covered under the terms of the policy is "functional." The word "functional" refers to disorders that are without known organic basis. A functional disturbance is one in which the performance or operation of an organ or organ-system is abnormal, but not as a result of known changes in structure. Campbell, *Psychiatric Dictionary* at 257.

The physician's letter indicates that Kendra's "speech therapy" was used to correct existing learning disabilities which were

not the result of speech loss or damage due to a "sickness." Consequently, Great American's interpretation that Kendra's "speech therapy" was used for the purpose of correcting a functional nervous disorder was a reasonable interpretation of the policy term.

## INAPPLICABILITY OF ESTOPPEL

 Plaintiffs contend that General American should be equitably estopped from denying their claim under the terms of the Plan as a result of representations made by Ana Osbon, whom they contend is an agent of General American. The evidence indicates that Ms. Osbon was an employee of United Management and was not employed by General American. Of course, estoppel cannot be invoked against General American based upon representations made by an employee of United Management.

Even if Ms. Osbon were Great American's agent, equitable estoppel would not be available to obtain the relief sought by Filary. Count Five of Plaintiff's Amended Complaint alleges that:

> General American Life Insurance has failed to provide benefits to plaintiffs under the terms of Plaintiff's Employment Retirement Income Security Program Act (ERISA) benefit plan. Plaintiff brings this Count under 29 U.S.C. 1132 to enforce rights under the terms of the ERISA plan.

ERISA preempts state law contract theories based on estoppel, *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (1985), but not federal claims based on estoppel. *Id.* at 1096. In *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106 (9th Cir.1976) (per curiam) the Ninth Circuit held that a benefit plan could not be equitably estopped from denying benefits if payment would be inconsistent with the written plan. *Thurber* pointed out that payment contrary to the provisions of the written agreement would have been illegal because it would represent a "diversion of contributions made on behalf of covered employees outside the terms of the trust." *Id.* at 1109.

The action in this case was brought to enforce rights and recover benefits "under the terms of the plan." Since the plaintiffs are asking the court to estop Great American from denying Filary the recovery of benefits that would be paid out under the terms of the plan, and such a recovery would be contrary to the written terms of the plan, estoppel is not available as a remedy.

IT IS ORDERED granting General Insurance's Motion for Summary Judgment.