Daniel **KUNIN**, Plaintiff–Appellee,

v.

**BENEFIT TRUST LIFE INSURANCE COMPANY, Defendant–Appellant.**

**No. 88–6573.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1989.

Decided March 21, 1990.

Robert F. Keehn, Booth, Mitchel & Strange, Los Angeles, Cal., for defendant-appellant.

Sanford M. Gage and Thomas F. Borcher, Beverly Hills, Cal., for plaintiff-appellee.

Before NORRIS, REINHARDT and TROTT, Circuit Judges.

REINHARDT, Circuit Judge:

Benefit Trust Life Insurance Company ("Benefit Trust") appeals the decision of the district court awarding benefits to Daniel Kunin ("Kunin"). Kunin, the Senior Vice–President of Maxim's Beauty Salons, Inc., incurred over $50,000 in medical bills for the treatment of his child for autism. Kunin sought reimbursement of his expenses under a group health insurance policy issued to his employer; the parties agree that this policy is itself an "employee welfare benefit plan" governed by ERISA, and that Benefit Trust functioned as both insurer and plan administrator. Following a brief investigation, Benefit Trust agreed to pay $10,000, but no more, on the ground that autism fell within the policy's limitation for "mental illness." The district court concluded that autism is not a mental illness and that the denial of benefits was arbitrary and capricious, and ordered that the claim be paid in full. We agree that Benefit Trust was obligated to pay the full amount of the claim.

Benefit Trust's medical director's cursory investigation did not provide reasonable grounds for determining that autism is a mental illness. The testimony of Kunin's experts amply supports the finding that Benefit Trust's denial of benefits on the basis of that inquiry was arbitrary and capricious. Moreover, it is unclear whether the term "mental illness" encompasses autism. Under California law, where an unclear or ambiguous term is used in an insurance policy, the ambiguity must be construed in favor of the insured. Because state rules regarding the construction of insurance contracts are expressly saved from ERISA preemption, and because sound judicial policy requires the application of such state rules in ERISA cases, we hold that they are incorporated into the federal common law governing ERISA claims. We affirm.

## FACTS

Benefit Trust is the insurer and plan administrator of a group health and medical policy which covers Kunin by virtue of his employment status with Maxim's. The policy is an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(1).

In 1986 Kunin's son, Alex, received treatment for autism for approximately thirty days at the UCLA Neuropsychiatric Institute. Having incurred $54,696.96 in hospital bills as a result of his son's stay, Kunin submitted a claim to Benefit Trust.

The policy limits medical benefits for "mental illness or nervous disorders" to $10,000 per calendar year. Benefit Trust refused to pay any amount in excess of that sum because it determined that autism was a mental illness within the meaning of the policy, and was therefore subject to the policy's limiting clause. This decision was based on the recommendation of Dr. Zolot, Benefit Trust's medical director. Dr. Zolot made the determination that autism was a mental illness after having informal conversations with three psychiatrists, whose experience with autism is unknown, and after reviewing a textbook definition of autism which states that autism is generally accepted to be organically based, although it was once thought to be "primarily psychiatric."

Kunin filed suit in state court, challenging Benefit Trust's interpretation of the policy. Benefit Trust removed the matter

to federal court, asserting federal question jurisdiction under ERISA. Kunin acknowledged this basis of federal jurisdiction, conceded that his state claims were preempted, and proceeded solely on the basis of his ERISA claim.

## THE DISTRICT COURT OPINION

The issue put to the district court by the parties was whether Benefit Trust's denial of benefits, based on its view that autism was a mental illness, was arbitrary and capricious. The court noted that while administrators' decisions are normally reviewed under an "arbitrary and capricious" standard, less rigorous standards have been applied when the administrator is not entirely impartial or objective, and may have a vested interest in denying benefits. It said that where the plan administrator is also the insurer, as in the present case, a lower standard of review might be appropriate. *Kunin v. Benefit Trust Life Ins. Co.*, 696 F.Supp. 1342, 1345 (C.D.Cal.1988). However, since it concluded that the decision of Benefit Trust could be overturned even under the "arbitrary and capricious" standard, the court declined to decide whether a lower standard of review would ordinarily be applicable. *Id.*

Although insurance contract terms are interpreted as a lay person would interpret them, the district court primarily considered the testimony of experts. However, it, correctly, relied on that testimony solely in order to determine the "plain and ordinary" meaning of the term "mental illness." Kunin's expert, Dr. Betty Jo Freeman, testified that "mental illness" refers to "a behavioral disturbance with no demonstrable organic or physical basis.... [It] stems from reaction to environmental conditions as distinguished from organic causes." Autism clearly falls outside the scope of mental illness under this definition. Dr. Ritvo, Kunin's second expert, agreed with the definition, and testified that his experiences with families of autistic individuals have shown that the disease is not commonly perceived as a mental illness.[1] The court found the testimony of these experts "clear, authoritative, and entirely convincing," and found their definition of "mental illness" consistent with the plain and ordinary meaning of the term. *Id.* at 1346.

Benefit Trust's expert, Dr. Marvin Gillick, first offered a definition of "mental disorder" found in the American Psychiatric Association's *Psychiatric Glossary.* "Mental disorder" is defined as "an illness with ... impairment in functioning due to a social, psychologic, genetic, physical/chemical, or biologic disturbance.... The illness is characterized by *symptoms* and/or impairment in functioning."[2]

The district court rejected Dr. Gillick's definition, noting that it could include a myriad of ailments that would never be considered mental illnesses, such as cancer or a broken leg. Dr. Gillick then suggested that mental illness was "an aberrant behavior syndrome or manifestation which has its basis in the neurological axis and/or central nervous system, but whose precise etiology is uncertain." The court rejected this definition as well, because it would exclude illnesses clearly within the ambit of mental illness solely because their causes are known. *Id.*

The court then accepted the definition offered by Kunin's experts. It held that including autism within the limitation clause covering mental illness was not a reasonable interpretation of the contract and the plan, and that the denial of benefits was arbitrary and capricious, and in violation of 29 U.S.C. § 1132. Kunin was awarded the claimed benefits plus pre-judgment interest. *Id.* at 1346–47.

## ANALYSIS

### A. The Standard of Review

1. *Reviewing the ERISA Administrator's Denial of Benefits*

Until recently in this circuit, denial of benefits by an ERISA administrator could

---

1. Dr. Ritvo has participated in the publication of over 100 papers on autism, and, we are told, is generally recognized as the world's foremost authority on the subject.

2. Dr. Gillick is a board certified psychiatrist, but has had limited experience with autistic individuals.

ordinarily only be reversed by the district court if the decision was "arbitrary, capricious, made in bad faith, not supported by substantial evidence or erroneous as a matter of law." *Johnson v. District 2 Marine Eng'rs Beneficial Ass'n,* 857 F.2d 514, 516 (9th Cir.1988). An administrator's opinion was said not to be arbitrary or capricious "if it [was] a reasonable interpretation of the plan's terms and was made in good faith." *Dockray v. Phelps Dodge Corp.,* 801 F.2d 1149, 1152 (9th Cir.1986). However, when an administrator had a conflict of interest, then the district court was required to give the determination less deference than ordinarily afforded under the arbitrary and capricious standard. *Id.* In the present case, Benefit Trust has a conflict of interest, because it was the insurer as well as the administrator of the plan.

After the district court issued its opinion, the Supreme Court adopted a substantially different rule concerning the standard of review. In *Firestone Tire & Rubber Co. v. Bruch,* — U.S. —, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Court held that denial of benefits challenged under section 1132(a)(1)(B) should be reviewed *de novo* unless the plan gives the administrator the authority to exercise discretion in determining ineligibility or construing the terms of the plan. Kunin would have this court review Benefit Trust's denial of benefits under the newly announced *de novo* standard.

While acknowledging that after *Firestone* the administrator's decision would ordinarily be reviewed *de novo,* Benefit Trust contends that here it tried the case in the lower court under the "arbitrary and capricious" standard,[3] and that because of its reliance on that standard, it would be improper for us to review the case as if a different standard had been applicable. We will assume, without deciding, that Benefit Trust is correct in this regard, although we have substantial doubt that it is. Among other reasons, we see little chance that Benefit Trust was prejudiced by any reliance on the more stringent standard of review.

For purposes of this appeal, therefore, we will review the district court's decision on the assumption that it was required to determine whether Benefit Trust's denial of Kunin's claim for benefits was arbitrary and capricious. In doing so we, like the district court, will ignore Benefit Trust's conflict of interest.

**2. *Reviewing the District Court's Findings***

We next consider under what standards we review the district court's determinations. The district court's finding that "mental illness," as that term is commonly understood, does not include autism was based on substantial testimony from expert witnesses as to the meaning or scope of that term. Accordingly, that finding constitutes a finding of fact, reviewed by this court under the clearly erroneous standard. *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The conclusion that denial of coverage was arbitrary and capricious followed a full examination of the facts and circumstances underlying that determination and was essentially fact governed. Thus the mixed question of fact and law presented here, unlike most such questions, is also reviewed under the clearly erroneous standard. *Id.* at 1202. However, in this case, the question whether the term "mental illness" is ambiguous can be answered by an examination of the words of the policy alone. The district court's implied finding of ambiguity does not fall under any of the exceptions to the general rule that mixed questions of fact and law are reviewed *de novo. Id.* at 1203–04. Therefore, we review that finding under the nondeferential *de novo* standard.

**B. *The Medical Director's Opinion***

▮ The district court found that Benefit Trust acted unreasonably in determining

---

**3.** Benefit Trust points to the pre-trial conference order, which states the relevant inquiry as "[w]hether the condition for which plaintiff's dependent, Alex Kunin, was examined and treated in approximately August of 1986 can be *reasonably considered* to be "mental illness or nervous disorders" (emphasis added).

that autism was a "mental illness," and therefore the decision to deny benefits was arbitrary and capricious. We agree with this result.

The evidence that Benefit Trust's medical director gathered provided an altogether inadequate basis for determining autism to be a mental illness. The record does not indicate that the doctors with whom the medical director consulted had any significant experience with or particular expertise concerning autism. Moreover, the director made no effort to discuss the matter with Alex Kunin's physicians, who later unequivocally testified that autism is not a mental illness. Additionally, the textbook definition Dr. Zolot relied on states that although autism was previously thought to be "primarily psychiatric, it is now thought to be organically based." On its face, this definition contains no conclusions about whether autism should be classified as a mental illness. If anything, the fact that autism is no longer considered "primarily psychiatric" suggests that autism *is not* a mental illness.

State-law cases have differed in their classification of organically based diseases like autism as mental illnesses. In *Arkansas Blue Cross & Blue Shield, Inc. v. Doe,* 22 Ark.App. 89, 733 S.W.2d 429 (1987) (en banc), the Court of Appeals of Arkansas found that classifying bipolar affective disorder (formerly manic-depressive disorder) by cause rather than by symptom was proper. Because its cause was physical (organic), the disorder was held to be not subject to the policy's mental illness limitations.

Alternatively, in *Equitable Life Assurance Society v. Berry,* 212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989), a California court of appeals held that medical expenses incurred for the treatment of manic-depressive illness were not covered by an insurance policy that excluded coverage for "mental or nervous disorders." Equitable's expert testified that most serious psychiatric problems, including manic-depression, are caused by physiological dis-

ease processes. The witness further testified that the only problems that would fall into the "functional" category (what Drs. Freeman and Ritvo characterize as "environmentally induced") would be marital disorders, substance abuse, and other problems caused by "the complications of our industrial society." 260 Cal.Rptr. at 824. In *Equitable,* the court held that *manifestation, not cause,* provides the "yardstick" by which one determines whether a mental disorder occurs. It therefore rejected the organic/functional distinction as a basis of determining coverage.

We conclude that Dr. Zolot's inadequate investigation did not provide a reasonable basis for making a determination that autism is a mental illness.[4] This result is amply supported by the weight of the evidence adduced at trial. Drs. Ritvo and Freeman testified that mental illness "refers to a behavioral disturbance with no demonstrable organic or physical basis.... [It] stems from reaction to environmental conditions as distinguished from organic causes. Thus ... autism would clearly fall outside the aforesaid criteria and factors for mental illness." 696 F.Supp. at 1346. The district court agreed with this analysis. It noted autism's prevalence throughout the world and that its incidence and characteristics remain constant across socio-cultural environments. Moreover, it noted that autism cannot be treated by traditional methods of psychotherapy. *Id.* at 1347. The court's observations are wholly consistent with the conclusion of Drs. Ritvo and Freeman that autism is not a mental illness, in either the lay or the technical sense. The doctors' testimony, in turn, supports the district court's finding that the defendant's inclusion of autism within the policy's limitation clause was unreasonable. We therefore conclude that the district court's holding that the denial of benefits was arbitrary and capricious was not clearly erroneous.

C. Ambiguity in the Language of the Policy Exclusion

 California insurance law requires that ambiguities in insurance contracts be

---

4. The administrator's decision predated *Equitable* by more than two years. Therefore, Dr. Zolot could not have relied on that case in reaching his conclusion.

construed against the insurer.[5] Coverage clauses are interpreted broadly in favor of coverage, while exclusions are interpreted narrowly. *See State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 101–02, 514 P.2d 123, 109 Cal.Rptr. 811 (1973). A limitation of coverage to a specified amount is similar in purpose and effect to an exclusion and the same principles of construction should be applied to both. Because we find the language of the limitation in question to be ambiguous, we hold in favor of coverage on the alternative ground that Benefit Trust, in its capacity as insurer, did not properly construe the ambiguities in its policy in Kunin's favor, as California law requires.

■ Of course, California law is not applicable here of its own force. The group health and medical policy that covers Kunin is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1); section 502 of ERISA, rather than state contract law, provides the legal basis for Kunin's claim. Thus, the resolution of that claim implicates federal interests in an area where Congress has legislated extensively, and the rule of decision must be a federal one. However, in specifying that rule we must decide whether a uniform federal common-law rule of decision should be applied, or whether state law may be incorporated, in whole or in part, into the federal common law.

By nature, federal programs require controlling federal rules. However, "[c]ontroversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." *United States v. Kimbell Foods*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979). State law can sometimes control such controversies, either because Congress intends courts to look to state law, or because the incorporation of state law into the federal common law is "appropriate as a matter of judicial policy under the three-part test established by *Kimbell Foods*." *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1458 (9th Cir.1986).

We believe the California rule regarding construction of insurance contracts applies here, both as a matter of congressional intent and as a matter of sound judicial policy. The clearest indication of Congress's intention regarding choice of law under ERISA is the preemption provision contained in that act.[6] Section 514(a) provides in sweeping terms for the preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). However, Congress also enacted an "insurance savings clause" in section 514(b)(2)(A), which states that with one exception not relevant here,[7] "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). Although the breadth of section 514(a) leaves no doubt about the importance Congress attached to the federal interests involved, we think it equally clear that Congress meant to leave state laws regulating insurance contracts perfectly intact, and to incorporate those laws into the regulatory scheme insofar as they

---

5. In discussing the construction of insurance contracts, Benefit Trust cites only California law. However, because Maxim's is a Minnesota corporation and the plaintiff is a resident of Minnesota, we note that Minnesota law is to the same effect. *Hubred v. Control Data Corp.*, 442 N.W.2d 308 (Minn.1989).

6. Because Kunin's suit arises under federal rather than state law, the case does not actually present a federal preemption question and we look at preemption under ERISA only as evidence of congressional intent.

7. The exception is section 514(b)(2)(B), the so-called "deemer clause," which provides, "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...." 29 U.S.C. § 1144(b)(2)(B). This provision prevents states from evading the preemptive effect of section 514(a) by legislatively bringing self-insured plans within the scope of state law generally applicable only to insurers. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). It is irrelevant here, however, because Benefit Trust has not been *deemed to be* an insurer; it *is* an insurer.

affect insurance contracts purchased by ERISA plans. Since this case presents us with just such a circumstance, we hold that the California rule of construction applies to the insurance contract before us as a matter of federal common law.

Even if Congress's intent to preserve state insurance law were less clear, we would, under *Kimbell Foods*, decline to develop a uniform federal rule to supplant California's rule of construction.[8] Under the *Kimbell Foods* test, a court must determine "(1) whether the issue requires 'a nationally uniform body of law'; (2) 'whether application of state law would frustrate specific objectives of the federal programs'; and (3) whether 'application of a federal rule would disrupt commercial relationships predicated on state law.'" *Mardan*, 804 F.2d at 1458 (quoting *Kimbell Foods*, 440 U.S. at 728–29, 99 S.Ct. at 1458–59). Applying this test to the facts before us, we conclude again that the California rule is appropriate.

First, nothing about the construction of insurance contracts, even those sold to ERISA plans, calls for national uniformity. Issuers of insurance contracts have always been forced to comply with the separate and sometimes divergent constructions placed upon the language of their policies in each state, and there is no reason to believe that insurance companies are any less able to protect their interests merely because the contract in question is issued to an ERISA plan. Second, application of the state rule of construction is not, in this case, inconsistent in any way with the objectives of ERISA, because the rule of construction has no effect on the coverage for which Benefit Trust or any other insurer can contract *so long as the policy is precisely drafted.* Finally, application of a uniform federal rule of construction, applicable only to insurance contracts that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), could have some adverse effect on commercial relationships predicated on the rules of construction applicable

within each state to all other insurance contracts. Insureds to some extent, and members of the insurance bar to a far greater extent, rely upon settled rules of construction within each state in drafting, purchasing, and litigating over the meaning of insurance contracts. The settled expectations of all parties would be needlessly complicated if we were to introduce a uniform federal rule of construction for policies purchased by ERISA plans, while continuing to apply a state-law rule, possibly different, to all other insurance contracts. Among other things, such a regulatory scheme might leave insurers subject to conflicting constructions of identical language in identical policies. In short, statewide uniformity for all insurance contracts is more important than nationwide uniformity for only some of them. Thus, either as a matter of congressional intent, or as a matter of sound judicial policy, it is the state rule of construction that we must apply.

It remains for us to determine if the meaning of the term "mental illness" is so clear and well fixed that an ordinary reader of the policy would recognize that autism must be included. If not, in light of the California rule that ambiguities in the policy must be construed against the insurer, Kunin must prevail. A plain reading of the language tells us beyond any question that "mental illness" is ambiguous, at least insofar as autism is concerned. The policy contains no definition or explanation of the term "mental illness," and offers no illustration of the conditions that are included or excluded. Nor does the policy contain any language suggesting whether the cause or the manifestation determines whether an illness is covered; yet in the case of autism the answer to that question may well be determinative. Here, the failure of the policy to define its terms is fatal to the insurer's attempt to limit payment.

Insurance contracts generally spell out in inordinate detail the meaning of terms that

---

**8.** See note 5 *supra*. While preemption is not, strictly speaking, at issue in this case, we note that our conclusion that the California rule of construction falls within the insurance savings clause of ERISA makes it unnecessary to decide whether it would ever be appropriate to incorporate into federal common law a state-law rule that Congress had chosen to preempt.

lack a fixed meaning. Great efforts are ordinarily made to eliminate the natural ambiguity that exists in so many of the words and phrases we use daily. In this policy, however, Benefit Trust makes no attempt whatsoever to describe the scope of a term that has no precise or generally accepted definition. Under these circumstances, we conclude that the term "mental illness" is ambiguous. The vague evidence on which Benefit Trust's medical director based his determination, and the evidence in the form of opinion testimony offered by Alex Kunin's doctors, strongly support our conclusion. Thus, we hold that Benefit Trust erred in failing to construe the ambiguity in favor of the insured.[9]

For the two alternative reasons discussed above, the decision of the district court is

AFFIRMED.

---

**9.** We recognize that one California court has recently reached a contrary result, *Equitable Life Assurance Soc'y v. Berry*, 212 Cal.App.3d 832, 260 Cal.Rptr. 819 (Ct.App.1989). While the illness there was manic-depression, the reasoning of the opinion appears to conflict in some respects with the view we have expressed above. On the other hand the Equitable policy, unlike the one before us, defined "[m]ental or nervous treatment" in a manner that may well have covered the treatment involved; furthermore, the testimony of the experts in that case was of a wholly different order. In any event, we do not believe that the California Supreme Court would find the meaning of the bare, unexplained term "mental illness" so plain and clear that the ordinary citizen would understand that autism is excluded from full coverage under the policy.