Joseph ALAIRE; Michael Rowan; Alfred Lewis; Scott Kos; Ronald Jankoski; Louis Reedy; Russell Joedicker; Edward Vacik; Edwin Sochacki; John Juris; Jerome O'Halloran; Steven Ward; Bobby Garrison; Doris Van Dyke, Executor of the Estate of Thomas Van Dyke; Kenny Rogal; E. Mike Jurijcuk, Plaintiffs,

v.

AMOCO CORPORATION, Defendant.

No. 90 C 0611.

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1991.

William S. Wilson, Wilson & Wilson, La Grange, Ill., for plaintiffs.

Charles B. Wolf, Philip L. Mowery, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action seeks severance benefits allegedly due by reason of the termination of 16 ex-employees of Amoco Corporation ("Amoco").[1] Amoco's nonpayment of such benefits assertedly violates the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Amoco now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, its motion is granted.

### Facts[2]

All plaintiffs were employed by Amoco's wholly-owned subsidiary Amoco Oil Compa-

---

**1.** One of the ex-employees, Thomas Van Dyke, has died. Doris Van Dyke, as executor of his estate, advances his claim—but to avoid awkwardness in the factual discussion, the collective term "plaintiffs" will be used to include the decedent rather than his executor.

**2.** Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called upon to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant—in this case plaintiffs (*DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). There is no difficulty in that regard, because this District Court's General Rule 12(m) and 12(n) (which require factual statements in support of and in opposition to Rule 56 mo-

ny[3] at its toll road facilities in Hinsdale and Des Plaines, Illinois (the "Facilities"). All were members of Local 705 of the Truck Drivers, Oil Drivers, Filling Station and Platform Workers' Union ("Local 705").

Plaintiffs' claim rests on their purported right to participate in Amoco's Severance Allowance Policy (the "Policy," Complaint Ex. B). These are the relevant provisions of the Policy:

> The purpose of this Policy is to provide severance allowances for employees whose services are permanently terminated for causes which are no fault of the employee involved. The Policy may be implemented for a particular employee-reduction situation for a limited period of time, and an employee affected by it will be informed as to its provisions.
>
> \* \* \* \* \* \*
>
> "Company" means Standard Oil Company and any of its subsidiary companies whose management elects to apply the Policy to a particular employee-reduction situation for a limited period of time.
>
> \* \* \* \* \* \*
>
> "Employee" means any person giving his full-time services to the Company who is designated as being covered by the Policy at the time it is made effective but shall not include temporary, part-time or casual employees, not any classification of employees designated by the management of a Company as not eligible to participate.

By letter dated November 12, 1984 (Complaint Ex. A), Amoco informed plaintiffs and other employees at the Facilities that the locations would be converted from company to dealer operations effective December 1, 1984 and that the services of each employee would no longer be required af-

ter November 30, 1984. As a result, all employees covered by the collective bargaining agreement between Amoco and Local 705 were terminated. At least some of the plaintiffs were offered employment at a lower level of compensation by the new operator of the Facilities.

Pursuant to "effects bargaining" between Amoco and Local 705, Amoco agreed to pay wages to each employee through December 31, 1984 and also to provide them with vacation pay for 1985 if they remained on the job through November 30, 1984. Neither the applicable collective bargaining agreement nor the effects bargaining included any undertaking by Amoco to cover the Local 705 employees under the Policy, nor did Amoco ever advise the employees that they were covered by the Policy. On the contrary, any employees who asked were explicitly told that they were *not* covered by the Policy.

Plaintiffs initially sued Amoco in the Cook County Circuit Court of Illinois. Amoco timely removed the action to this Court on the ground that plaintiffs are asserting a claim for benefits under an "employee welfare benefit plan" as defined in ERISA (29 U.S.C. § 1002(1)). Although this opinion holds that plaintiffs lose on the merits, Amoco is right in its characterization of their claim—so that this Court's subject matter jurisdiction is beyond dispute.

### Plaintiffs' Non–Coverage Under ERISA

■ Neither ERISA nor any other legislation dictates that an employer *must* provide a benefit plan for its employees (as to ERISA, see *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3rd Cir. 1990)). As stated in *Moore v. Reynolds Metals Co. Retirement Program for Sala-*

---

tions) have generated an admission by plaintiffs that the facts stated by Amoco are undisputed, and inferences from those uncontested facts really play no role here. And although plaintiffs have also submitted what they characterize as a "Statement of Additional Undisputed Facts Which Require Denial of the Defendant's Motion for Summary Judgment," those facts are wholly nonmaterial—that is, non-outcome-determinative.

**3.** Because Amoco has previously waived any potential defenses based on the identity of the corporation involved and the fact that this action is brought against Amoco rather than its subsidiary, this opinion will use "Amoco" indiscriminately to refer to both the parent and subsidiary corporations.

*ried Employees,* 740 F.2d 454, 456 (6th Cir.1984) (emphasis in original):

> We note initially that an employer has no affirmative duty to provide employees with a pension plan. H.Rep. No. 93–807, 93rd Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. and Ad.News, 4670, 4677. In enacting ERISA, Congress continued its reliance on *voluntary* action by employers by granting substantial tax advantages for the creation of qualified retirement programs. *Id.* Neither Congress nor the courts are involved in either the decision to establish a plan or in the decision concerning which benefits a plan should provide. In particular, courts have no authority to decide which benefits employers must confer upon their employees; these are decisions which are more appropriately influenced by forces in the marketplace and, when appropriate, by federal legislation.

Hence plaintiffs must look solely to Amoco's Policy to confer any rights that they can hope to invoke here. But the unambiguous terms of the Policy state that it is not brought into play in any employee-reduction situation unless and until Amoco affirmatively elects to do so. No one is an "employee" covered by the Policy unless and until Amoco makes such an election. Amoco did not do so here. That kind of employer decision (or nondecision) does not even reach ERISA's front door.

■ Indeed, even if plaintiffs had been able to open that metaphorical door for Amoco's employees as a group (as they have not), Amoco would have had the unfettered right to close it before plaintiffs had been terminated. *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.1988) (citations omitted) has succinctly summarized that aspect of an employer's severance-benefit duties (or the absence of such duties) under ERISA:

> Under ERISA, employee benefits are divided into two categories—"welfare" benefits and "retirement or pension" benefits. 29 U.S.C. § 1002(1)–(2). Although ERISA imposes stringent accrual, vesting, and funding requirements on retirement benefit plans, such requirements are not imposed on welfare benefit plans. 29 U.S.C. §§ 1051, 1081. Severance benefit plans are welfare benefit plans. As such, severance benefits are unaccrued, unvested benefits. Moreover, severance benefit plans, though subject to certain disclosure (29 U.S.C. §§ 1021–1031) and fiduciary (29 U.S.C. §§ 1101–1114) requirements, are exempt from the more stringent ERISA requirements. 29 U.S.C. §§ 1051, 1081. An employer may therefore, unilaterally amend or eliminate a severance plan without violating ERISA. This is so because an employer is permitted to act in a dual capacity as both the manager of its business and a fiduciary with respect to unaccrued benefits. An employer is therefore, free to alter or eliminate severance benefits (which are usually solely funded by the employer) without consideration of the employees' interests. In short, an employer does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan.

Thus even if there had been a generalized Amoco severance policy potentially applicable to plaintiffs' termination, Amoco in its capacity as manager of its business would have had the unilateral right to eliminate it.

But that hypothetical prospect need not be dealt with, for Amoco was not modifying or abolishing a preexisting severance benefit policy. It was rather choosing not to implement such a policy as to plaintiffs in the first instance. For the same reasons that ERISA's fiduciary standards do not attach to an employer's decision to amend or abolish a benefit plan once established, they surely do not apply to an employer's judgment that a benefit plan should not be established *at all* in a given situation.[4] Such a judgment is made outside of the

---

4. *Young* involved an Amoco severance policy that was worded identically—it "provided that Amoco management could elect to 'apply [the severance policy] to a particular employee-reduction situation'" (849 F.2d at 1040–41). Quite understandably our Court of Appeals hardly blinked in stating (*id.* at 1047) the obvious—discussed at length here:

boundaries of ERISA, whose requirements do not begin to apply until a plan is being *administered* (*Hozier*, 908 F.2d at 1158). Yet another Amoco case—*Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986) (citations omitted)—has put the same concept simply:

> ERISA does not prohibit an employer from acting in accordance with its interests as employer when not administering the plan or investing its assets.

Because Amoco was making the kind of business judgment as to which an employer is given free rein, ERISA and its accompanying fiduciary duties do not even come into this case. This Court has no warrant to second-guess Amoco's decision not to implement its Policy for plaintiffs' benefit.

That whole concept, as basic as it is to the law of employee benefits, somehow eludes plaintiffs' counsel entirely. As a result, they devote all their attention to what are really nonissues.

 Thus they urge that this Court must decide whether to review Amoco's decision not to cover plaintiffs under the Policy under either a "de novo" standard or an "arbitrary and capricious" standard that is reserved to evaluate discretionary decisions of a plan administrator (see *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). But again these standards come into play only when a policy is being administered, when the administrator may be in a position to interpret the terms of the policy and to determine who receives benefits. Because the Policy does not apply here to begin with, there is no need to comb through its terms to ascertain whether they grant any discretionary authority to the administrator.[5]

It is equally irrelevant that (as plaintiffs emphasize) other employees under arguably similar past circumstances were given severance benefits under the Policy. If Amoco had *chosen* to implement the Policy and then had arbitrarily denied benefits to plaintiffs in a manner inconsistent with its prior application of the Policy, plaintiffs might have had a claim (see *Pilon v. Retirement Plan for Salaried Employees of Great Northern Nekoosa Corp.*, 861 F.2d 217, 219–20 (9th Cir.1988)).[6] But because Amoco was under no duty to extend the Policy to plaintiffs at all, it is unnecessary to analyze the facts of those prior situations here.

### Conclusion

Because ERISA does not require Amoco to implement its Policy in any given situation, no genuine issue of material fact exists as to whether Amoco violated ERISA in denying severance benefits to plaintiffs. Amoco is entitled to a judgment as a matter of law. This action is dismissed with prejudice.

---

Management was free however, to exclude categories of employees from participation under the plan.

5. Both parties discuss whether discretion is given to the administrator of the Policy by the Policy's provision that Amoco "may" implement the Policy in a particular employee-reduction situation. Once again, that language relates to the employer's decision whether to implement the Policy in the first instance, which is not judicially reviewable at all, rather than to a grant of discretion to construe terms in *application* of the Policy (such as in, e.g., *Petrilli v. Drechsel*, 910 F.2d 1441, 1447 (7th Cir.1990)). Moreover, even if there were a "de novo" review of Amoco's decision as to "administration" of the plan, this Court would have to uphold Amoco's decision because once Amoco (qua employer) decided not to implement the plan, Amoco (qua plan administrator) had no alternative but to deny severance benefits to the affected employees (*Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir.1988); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 918–19 (3d Cir.1990)).

6. In any case, Amoco has not always implemented the Policy to cover collectively bargained employees in plaintiffs' situation. Whenever it has done so, that was pursuant to an express agreement between Amoco and the union (normally as reflected in a collective bargaining agreement). By contrast, Local 705's collective bargaining agreement had no provision for severance benefits. It is also true that in a few earlier instances Amoco agreed to give severance benefits to certain employees after it buckled under the pressure of effects bargaining. Again by way of contrast, here Amoco was able to conclude the effects bargaining without committing itself to offer severance benefits.